In re The CITY OF FORT WAYNE'S PETITION to ESTABLISH a CONSERVANCY DISTRICT.

No. 3–185A23.

Court of Appeals of Indiana, Third District.

Oct. 23, 1985.

T. Dean Swihart, Grotrian & Boxberger, Fort Wayne, for appellant.

Jack W. Lawson, Thomas J. Goeglein, Beckman, Lawson, Sandler, Snyder & Federoff, Fort Wayne, for appellees Certain Affected Lower Maumee Basin Property Owners.

Stephen W. Adair, Beers, Mallers, Backs, Salin & Larmore, Fort Wayne, for amicus curiae Allen County, Indiana.

STATON, Presiding Judge.

The City of Fort Wayne filed a petition seeking to establish a Conservancy District (District) covering Allen County. Flood control was the only objective. Notice of the petition to county freeholders was found deficient by the trial court so the district was established, but was confined to Fort Wayne's corporate limits. Fort Wayne appeals and we address the following issues:

I. Whether Ind.Code 13-3-3-17 requires notice be sent to "freeholders" or to "owners" when it says notice is to be sent "to each *freeholder* who has not signed the petition and who *owns* land in the proposed district." (emphasis added).

II. Whether the use of the Allen County Auditor's computer records to compile a list of names to whom notice was sent is proper when the records contain names of "owners" not "freeholders," and Ind.Code 13-3-3-17 says notice is to be sent to "freeholders ... according to the records of the auditor of the county."

III. Whether the Conservancy District Statute allows the trial court to establish a conservancy district of a different size than the district proposed.

Reversed.

Fort Wayne has been flooded periodically throughout its history. Its location is tantamount to its flooding problems. The St. Joseph and St. Mary's River converge in Ft. Wayne and run into the Maumee River. In 1982 Ft. Wayne was again plagued with flooding. The Maumee River crested at 25.9 feet; a height of $2/10$ of an inch lower than the 1913 flood—the worst flood in Ft. Wayne history. Damage was so extensive President Reagan flew into Allen County, inspected the county and declared it a national disaster.

Recovery · from the 1982 flood was planned in three phases. First, flood emergency operations were installed during the flood. Second, services were provided after the flood, and last, a comprehensive flood protection plan was required to be developed within thirty days after the flood. The plan was developed and written. It outlined nine ways to reduce future flood damage.

A body of some sort was still needed to implement and administer projects designed to help control flooding. An advisory committee was formed to study what type of administrative body would be best suited to carry out the actual work of flood protection. Committee members decided a conservancy district would function best because it could cross political boundaries, raise taxes and provide a tangible structure for the receipt of various state, local and federal flood relief funds.

An overview of the legislation allowing the establishment of a conservancy district will simplify and facilitate our discussion of the particular facts and issues surrounding the Allen County Conservancy District petitioned for by Ft. Wayne.

Flood prevention and control is one of the nine purposes for which a conservancy district may be established.[1] Either free-

---

1. The nine purposes for which a conservancy district may be established are:

"(1) Flood prevention and control.

(2) Improving drainage.

(3) Providing for irrigation.

(4) Providing water supply, including treatment and distribution, for domestic, industrial, and public use.

(5) Providing for the collection, treatment, and disposal of sewage and other liquid wastes.

holders owning land in the proposed district or a municipality may petition for the establishment of a district. The petition must be signed by a certain number or percent of freeholders. Ind.Code 13–3–3–8. If the petition was filed by a municipality, each freeholder in the municipality is counted as a signatory to the petition. IC 13–3–3–8(b)(4).

Once the petition is filed,[2] a hearing date is set by the court, IC 13–3–3–16, and notice of the hearing must be given by publication and by first class mail "to each freeholder who has not signed the petition and who owns land in the proposed district, according to the records of the auditor of the county." IC 13–3–3–17.

At the hearing, the court determines whether the petition conforms to all requirements and then it refers the petition to the Natural Resources Commission of Indiana (Commission). After the Commission holds a hearing it reports to the court on whether the proposed district is necessary; whether it proposes to cover and serve a proper area; whether it is comparable to other conservancy districts; whether it will cost less than the benefits provided and whether it holds promise of economic and engineering feasibility. IC 13–3–3–22. The Commission report is prima facie evidence of the facts stated in it. IC 13–3–3–27.

After receipt of the Commission's report, the court sets another hearing. At this hearing the court must make certain findings. *See* IC 13–3–3–30, and based on its findings, either establish the district or dismiss the petition. *Id.* Appeals from the trial court must be taken within 30 days or the decision is final. IC 13–3–3–32.

(6) Developing forests, wildlife areas, parks, and recreational facilities where feasible in connection with beneficial water management.
(7) Preventing the loss of topsoil from injurious water erosion.
(8) Storage of water for augmentation of stream flow.
(9) Operation, maintenance, and improvement of any work of improvement for water-based recreational purposes, or other work or

Ft. Wayne's proposed Allen County Conservancy District was to be composed of "all land comprising the St. Marys, St. Joseph and Maumee watershed areas which lies within the established boundaries of Allen County, Indiana, and all of the incorporated area of the City of Fort Wayne." Record, p. 31 & 32.

Before the trial court referred the petition to the Commission, it made the following findings and order:

\* \* \* \* \* \*

"3. This court must determine whether or not the City has invoked the jurisdiction of the court in accordance with law and has complied with requirements of law as to adequacy of notice, form and content of the petition in accordance with statutory requirements governing the establishment of conservancy districts pursuant to I.C. 13–3–3 *et seq.*

4. The City duly gave notice of hearing on the petition by publication, the date of hearing being designated on September 12, 1983 before this court. Court's Exhibit 1.

5. The City caused copies of the notice (as published), to be timely deposited with the United States Postal Service, first class postage prepaid, bearing names and addresses of some, but not all, record owners of real estate as entered for taxation produced from the computer records of the office of the Auditor of Allen County on the green bar printout as evidenced in Exhibit 4 of the City.

\* \* \* \* \* \*

7. The green bar printout[3], the City's Exhibit numbered 4 is not evidence

improvement that could have been built for any other purpose authorized by this section." IC 13–3–3–2(a)(1)–(9).

2. The petition must be filed in the clerk's office of the circuit court of the county containing the most land within the proposed district. IC 13–3–3–7.

3. The greenbar printout was produced by the auditor's computer. The computer printed

of freeholders who own land in Allen County.

8. There is not evidence which permits the court to determine the number or the identity of freeholders in the proposed district which lies out of the area of the corporate limits of the City.

9. From the evidence offered through the Auditor of Allen County, the City cannot reasonably determine the number of or the identity of freeholders who own land from the records of the auditor for the following reasons:

a) the Auditor of the County could not provide information concerning freeholders pursuant to the City's request therefore; and,

b) the auditor does not maintain records according to freeholders, as such; and,

c) the computer has a limited number of characters; i.e., if the number of characters in the names of owners of any given tract of land exceed the limitation of 30 characters, then the green bar printout will not produce and reveal all owners of record; and,

d) all owners of record and all persons having a freeholder interest in real estate of record in Allen County are not programmed in the computer.

"10. The notice requirements of the statute (I.C. 13–3–317) are not met and can not be reasonably performed.

11. As a matter of law, the City is required to duly mail (at least twenty (20) days before the date of the hearing, first class postage prepaid) copies of the notice as published, in a newspaper of general circulation, only to each freeholder who has not signed the petition and who owns land in the proposed district according to the records of the Auditor of the County.

12. The Common Council of the City of Fort Wayne is the duly elected legisla-

tive body and representative of its constituents and, as a matter of law, '. . . each freeholder in the area of the municipality that is in the proposed district is counted as a signatory to the petition.'

13. The City has not fulfilled the jurisdictional prerequisites as to the proposed district which affects land and freehold interests which lie solely out of the area of the corporate limits of the City and, accordingly, as to such land and freehold interests, the petition does not bear the necessary signatures.

14. Since neither the number of or the identity of freeholders out of the area of the corporate limits of the City has not been determined in the evidence, and accordingly, since notice requirements cannot be satisified [sic] as to freeholders outside the area of the corporate limits of the City, the proposed district can include only the area of the municipality which its legislative body governs and represents, that is, the land located solely inside the corporate limits of the City of Fort Wayne.

15. The land area outside the corporate limits of the City is excluded from the proposed district unless and until the number of freeholders are properly determined, identified and notified, or the appropriate legislative body (or bodies) of the area of land in the county exclusive of the corporate limits of the City has, by ordinance duly adopted, petition(s) to join in the petition, in accordance with law.

16. The petition is granted only as to land in the proposed district that includes land solely inside the corporate limits of the City.

17. The petition is referred to the Natural Resources Commission of Indiana which shall investigate, determine and report to this Court, in writing, within ninety (90) days of receipt, according to law, and in a manner not inconsistent with this order."

mailing labels and the mailing labels were affixed to postcard notices. The greenbar list was supposed to represent an alphabetical listing of the names and addresses of all the mailing la-

bels and, hence, of everyone who received notice of the first hearing concerning Ft. Wayne's proposed district.

Record, p. 111–113, footnote added.

After the court received the Commission's report it held another hearing. Its final order incorporated the above order and held;

"* * *

District is ordered established not inconsistent with the prior orders herein and with consideration being given to all watersheds affected by flooding waters and having five (5) members comprising the Board of Directors with three (3) year staggered terms. There shall be three (3) directors who are residents within the corporate city limits of Fort Wayne, Indiana each representing one (1) commissioner district and two (2) directors who are residents of the county with one residing in the land area comprising the Lower Maumee Basin and one at large having qualified training, experience and education in reforestation and soil sedimentation all of whom shall serve terms provided by law.

It is recommended that at least two (2) persons be named and invited to serve as ad hoc members to the board and as liason representatives (but without voting rights at this time) to DeKalb, Adams and those counties also affected by flooding waters as specified in the findings of the Natural Resources Commission."

Record, p. 200.

## I.

### Notice

On review we must find the trial court was clearly erroneous before we will reverse. *Extra Energy Coal Co. v. Diamond Energy* (1984), Ind.App., 467 N.E.2d 439, 441; *Greenhaven Corp. v. Hutchcraft & Associates* (1984), Ind.App., 463 N.E.2d 283, 285. If the record reflects facts or inferences to support the trial court's findings then we will affirm its order. *Rose Acre*

*Farms v. Decatur Cty. Farm Bur.* (1984), Ind.App., 467 N.E.2d 26, 27.

The notice problem exists partly because of Fort Wayne's laxity and partly because of the wording of the statute which mandates notice be sent "first class postage prepaid, to each *freeholder* who has not signed the petition and who *owns* land in the proposed district, according to the *records of the auditor of the county.*" IC 13–3–3–17 (emphasis added).

Within the definition section of the Conservancy District legislation is a definition of freeholder:

" 'Freeholder' means a person who holds land in fee or for life, or for some indeterminate period of time, whether or not in joint title with one or more persons."

IC 13–3–3–1.

The statute is ambiguous because it directs notice be sent according to the auditor's records. Does this mean computer records? What if the freeholder records are in the township assessor's office? Lastly, the auditor that testified her computer records were compiled according to the following statutory definition of "owners:"

"Sec. 9. (a) For purposes of this article, the 'owner' of tangible property shall be determined by using the rules contained in this section.

(b) Except as otherwise provided in this section, the holder of the legal title to personal property, or the legal title in fee to real property, is the owner of that property.

(c) When title to tangible property passes on the assessment date of any year, only the person obtaining title is the owner of that property on the assessment date.

(d) When the mortgagee of real property is in possession of the mortgaged premises, the mortgagee is the owner of that property.

(e) When personal property is security for a debt and the debtor is in possession

of the property, the debtor is the owner of that property.

(f) When a life tenant of real property is in possession of the real property, the life tenant is the owner of that property."

IC 6–1.1–1–9, Record p. 518.

Legislative use of the phrase "who owns land" emphasizes the ambiguity. What role does the term freeholder play in the statutory phrase "to each ... freeholder who has not signed the petition and who owns land ...?" IC 13–3–3–17.

■ First we note the specific use of the term freeholder. The legislature could have said "taxpayer," "voter," or even "owner," but they said "freeholder." They defined the terms and used the term throughout the conservancy district legislation. We hold the legislature clearly intended all freeholders, not owners be notified.

■ Does the subsequent use of the phrase "who owns land ..." alter the meaning of freeholder? We think not. Words such as owns, owned, owner or owning are not technical terms. They change meaning depending on the context in which they are used. Application of any of these terms to real estate is thought to mean "fee simple" to many legal minds, and may indeed mean that in some circumstances, but is not a "black letter law."

If the phrase read "owner ... who holds land" it would be reasonable to assume owner meant legal title holder or fee simple or a similar narrower definition than "freeholder" because it is being used as a noun and describes a person. However, in the phrase "freeholder ..., who owns land," the clause "who owns land" is a descriptive clause. Note the clause is set off from the antecedent noun by a comma indicating a rather loose relationship to "freeholder." The term "owns" is used in an adjectival

clause to drive home the concept of legitimate ownership. It merely acknowledges what is being held—land; it does not limit the meaning of the term freeholder.

All freeholders must be notified and the term "owns" does not limit who is classified as a freeholder. This may appear to be an onerous burden, but we do not believe the legislature intended to create a requirement for notification that would be impossible to meet. A basic explanation of estates will illustrate why notification of *all* freeholders is a difficult, if not impossible task.

Estates in land are of two types: freehold estates and nonfreehold estates:

"*Freehold Estates*

\* \* \* \* \* \*

Fee simple absolute
Fee simple determinable
Fee simple subject to a condition subsequent
Fee simple subject to an executory limitation
Fee simple conditional

. . . . .

\* \* \* \* \* \*

Estate for one's own life
Estate for the life of another (*pur autre vie*)
Estate for one's own life and also for the life of another

*Non-freehold Estates* ...
Estate for years
Estate from period to period
Estate at will
Estate at sufferance"

Burby, *Real Property,* p. 6 (3rd ed. 1965).

Freehold estates are further divided into legal and equitable ownership. *Id.* at 7. It is when one thinks of all equitable freehold interests, whether recorded or unrecorded, that the problem of notifying "all freeholders" becomes apparent. Yet, the legislature did not define freeholder to exclude

equitable interests, therefore they must be notified of a proposed conservancy district. We do believe the legislature considered this problem, and solved it, by requiring notification be pursuant to the county auditor's records. The legislature intended only freeholders of record be notified.

## II.

### Auditor's Records

The Allen County Auditor has computer records and hard-copy records. Ft. Wayne officials relied completely on the computer records to compile a list of names and addresses of whom to notify. The trial court held this was wrong, and we hold the trial court was right.

The auditor's computer was designed to reach a taxing entity (i.e. "owners"), not freeholders. Because of its design, it was not capable of producing a list of all freeholders of record.

Testimony given by the Allen County Auditor amply supports the trial court's finding that notice was not properly given:

"Q. Now the green bar lists that are in evidence here, which you heard testimony on before, is it your opinion from knowledge of the records in your office that that green bar list contains all of the owners of real estate or freeholders of real estate in Allen County?

A. It would not contain the names of everybody that has interest in that because they do not have all of the multiple owners."

Record. p. 490.

"Q. Mrs. Goeglein, did you try to tell the city that you could not provide them with the information they were requesting?

A. Yes, I was concerned that it would be construed as the complete list of anybody that had an interest in property, and I wanted to make sure that they were aware of it.

Q. And how often did you try to tell them?

A. Everytime we talked to them we told them. And in the correspondence we spelled it out."

Record, p. 508.

"Q. So you are telling the court that the city relied on computer information even though you had told them that this information did not contain what they needed?

A. To my knowledge."

Record, p. 511.

"Q. Isn't it true that your computer only has thirty characters on it?

A. That's right.

Q. What does this mean to the records printed out by the computer?

A. If you have an extremely long name you may only have one name on there. If you have a shorter name you may have two names or joint names. But it is limited on the number of letters that can be printed.

Q. Did you inform the city of this limitation?

A. Yes, we did."

Record, p. 512.

"Q. Mrs. Goeglein, in clarification, do I understand, should we understand that all owners are not on record? All owners of real estate are not on record in your office?

A. They're on record in our office but they are not all on the computer.

Q. All right.

A. We have records but you would have to check them manually from the deeds.

Q. So that this transcript is accurate, at the risk of being repetitive, within the definition, the requirements and definition of 6–1.1–1–9, which says in subsection (b), 'The holder of a legal title to, legal title in fee is the owner of that property,' are we to understand that the computer should not be taken as a reliable because, Number 1, all of them are not on the computer; or, Number

2, part of the owners are on the computer but if there are more owners having characters in excess of 30, they have not been completely described?

A. That's correct."

Record, p. 518 & 519.

"July 28, 1983

TO: [Remonstrator's Exh I]     Michael Graham
C.D. & P.

TO:     JoAnn Shubert
C.D. & P.

FROM:     Gloria J. Goeglein
Allen County Auditor

RE:     REQUEST FOR COMPUTER SERVICES

\* \* \*

The Auditor's office does not have a 'list' of freeholders, our records are only of 'owners' as defined in I.C. 6–1.1–1–9 and 10.

Although our office contains copies of legal documents which list all the owners of property, our computer records only contain two 30-character fields for the names of 'owners'. Consequently, the computer printout may or may not contain names of all owners. In addition, even though multiple owners may be contained within the 30-character field, the printout will only contain a single mailing address. I hope this clarifies the information available from our office.

Sincerely,

s/ Gloria J. Goeglein
    Auditor, Allen County, Indiana

CC: Winfield C. Moses, Jr.
    Tom Ruzzo
    Data Processing Agency"

---

Record, p. 501

The computer records were incomplete, but other records exist from which the names and addresses of all freeholders of record could have been obtained.

The legislature set out what records must be kept in IC 6–1.1–5–1 to –14. These legislative requirements further support our holding that the legislature intended all freeholders of record must be notified.

Any document to be recorded with the county recorder must first be indorsed by the county auditor's office. IC 36–2–11– 14(a). The auditor must mark the documents as "duly entered for taxation" or as "not taxable" and enter a notation in the transfer books. IC 6–1.1–5–4. Hence, all recorded equitable freehold interests will be found in the auditor's records.

Other records required to be kept by the auditor or the township assessor [4] include a real property index numbering system which is open to public inspection, IC 6–1.- 1–5–2; all platted lands, IC 6–1.1–5–3; transfer books containing descriptions of all land that is conveyed by deed or parti-

---

**4.** In townships where a first or second class city is located, or where the population is over 35,000, the township assessor, not the county auditor, is responsible for much of the recordkeeping. *See* IC 6–1.1–5–9 and –9.1. Note the Conservancy District Statute concerning notification, IC 13–3–3–17, only refers to the records of the county auditor. We do not believe the lan- guage was intended to be exclusive. If the records enumerated in IC 6–1.1–5–1 to –14 formed the basis of the information used to send out notices to freeholders, then such notification should be adequate. It would not matter whether the records were compiled by or located in the township assessor's office or the county auditor's office.

tion, names of the parties, and the grantee's address, IC 6–1.1–5–4; assessments lists which contain records of the division, partition or change of ownership of any real property made by conveyance, sale, devise, or descent, IC 6–1.1–5–5; any judgments pertaining to the partition or transfer of real property, IC 6–1.1–5–6; and any real property which has passed to a party by will or by the laws of descent of Indiana, IC 6–1.1–5–7.

The tax records are extensive enough to contain information on freeholders of record and should have been used in culling a list of freeholders.

Notice pursuant to IC 13–3–3–17 means all freeholders, as defined by statute and recorded with the county auditor or township assessor pursuant to IC 6–1.1–5–1 to –14, must be notified of a proposed conservancy district. The auditor's computer may have been a useful tool for printing out some mailing labels but it did not contain a complete list of all freeholders. Therefore, exclusive use of the auditor's computer to satisfy the notice requirements of IC 13–3–3–17 was not proper. Ft. Wayne was lax in its effort of notification. We agree with the trial court's holding that notice was deficient, but we do not agree that the effect of the failure to send proper notice meant the district proposed in the petition should have been limited to Ft. Wayne's corporate limits.

### III.

#### Judge's Power

Ft. Wayne challenges the trial court's power to restrict the size of the proposed conservancy district. The court must make the following determinations before referring the petition to the Natural Resource Commission:

"(a) At the hearing on the petition for the establishment of the district, the court shall determine whether it bears the necessary signatures and complies with the requirements as to form and content. The court may not dismiss a petition with the requisite signatures be-

cause of alleged defects without permitting, in this or subsequent proceedings, amendments to correct errors in form or content. The court shall hear any interested person on the question."

IC 13–3–3–21.

Restricting the size of the conservancy district appears to be the result of the trial court's separation of the signature requirements of the proposed district into signature requirements for the city of Ft. Wayne and the signature requirements for the Allen County residents outside of Ft. Wayne. (*See supra*, finding # 13).

Statutory signature requirements are that

"(a) The petition must be signed by freeholders owning land *in the proposed district* in the minimum number, or proportion of all the freeholders in the proposed district, as follows:

(1) Districts of 1,000 freeholds or less, thirty percent [30%] of the freeholders.

(2) Districts of 1,001 to 5,000 freeholds, fifteen percent [15%] of the freeholders, but not less than 300 signatures.

(3) Districts of 5,001 to 25,000 freeholds, ten percent [10%] of the freeholders, but not less than 750 signatures.

"(4) Districts of 25,001 freeholds or more, five percent [5%] of the freeholders, but not less than 2,500 signatures."

IC 13–3–3–8(a) (emphasis added).

■ We hold the signature requirements must be met by the proposed district as a *whole*. Breaking up the proposed district into incorporated and unincorporated areas and demanding each area meet the signature requirements is not in compliance with the statute.

■ All we need to ask is whether the Allen County Conservancy District petition met the signature requirements. We can surmise that the petition satisfies the signature requirements because all the freeholders in Ft. Wayne are regarded as signatories to the petition. *See* IC 13–3–3–8(b)(4), but we do not base holdings on surmises. The computer records were inaccurate so they cannot be used to deter-

mine whether the signature requirements were met. The record has no other evidence of the number of freeholders in Ft. Wayne and in the proposed district as a whole. We have no choice but to hold the signature requirements of IC 13–3–3–8(a) have not been met. The trial court had the power to dismiss the petition once it found the requisite signatures were missing, but it chose to restrict the district and referred the petition to the Natural Resource Commission.

A hearing was held by the Commission and it reported the following findings to the court:

"C. A conservancy district which includes the Maumee River watershed of Dekalb, Allen and Adams Counties, exclusive of those areas contained within the Flat Rock Creek Conservancy District, proposes to cover and serve a proper area.

1. A conservancy district limited to the boundaries of the City of Fort Wayne is not feasible. Sufficient revenues would not be available, and areas outside the district would be required in order to implement a comprehensive solution for flood control. [Bruce Franke, Tr. Vol. II, 74; T. Dean Swihart, Tr. Vol. II, 104] [vi]

"2. A long-term solution to flooding on the Maumee River within and outside Fort Wayne can be provided by including within a conservancy district those areas in its Indiana watershed. [Woodrow Wilson, Tr. Vol. II, 141]

3. A single conservancy district to incorporate the portions of Dekalb, Allen and Adams Counties located within the greater Maumee River watershed, exclusive of the areas within the Flat Rock Creek Conservancy District, would maximize flood control benefits. The Maumee River watershed areas of Steuben, Noble and Wells Counties may be excluded as they contribute relatively insignificant water quantities.

[vi] An order of the Allen Circuit Court entered January 23, 1984 determined the notice requirements of IC 13–3–3–17 were unsatisfied with respect to freeholders outside Fort Wayne. These findings assume the service problems of the petitioner can be resolved. If not, and if the conservancy district must be limited to Fort Wayne, then the evidence does not support its establishment."

Record, p. 163 (footnote omitted).

The Commission's findings of fact are prima facie evidence of the facts. IC 13–3–3–27. No evidence is in the record to rebut the Commission's findings and on appeal they are conclusive.

To the above facts the trial court must apply the law:

"(b) If the court finds at the hearing that a purpose of the district is other than water supply or sewage disposal and that the costs and damages incident to the establishment of the district will exceed the benefits received within the district, it shall dismiss the petition."

IC 13–3–3–30.

"In all districts described in section 74.5(a) [13–3–3–74.5(a)] of this chapter, when one [1] purpose of the district is flood control, the commission and the court in establishing the boundaries of the district under this chapter shall consider all watersheds affected by the flooding waters. [IC 13–3–3–5.5, as added by P.L. 167–1983, § 1.]"

IC 13–3–3–5.5 (Supp.1985) (above section applies to Allen County).

The power to restrict or expand a conservancy district is necessarily implied in IC 13–3–3–5.5 (Supp.1985). This power ensures that motives for the boundaries of a proposed conservancy district are less likely to be arbitrary. The Commission provides expert guidance on what would be considered proper geological boundaries. The court may use its power to change boundaries but it must have some basis for its action.

■ Applying the law of IC 13–3–3–30 to the unrefuted, prima facie facts found by the Commission, the trial court was clearly erroneous in establishing a conservancy district within the Ft. Wayne corporate limits. No consideration appears to have been

given to the watershed areas [5] even though the trial court recites that it did consider such areas. The Commission found a conservancy district in the Ft. Wayne area would cover and serve a proper area only if it covered a three county area: DeKalb, Allen and Adams counties. Neither the original petition covering only Allen County would have served a proper area nor would the boundaries within Ft. Wayne as set by the trial court have served a proper area.

5. The map explains the watershed area under consideration:

Maumee River Basin

Watershed Divide

Record, p. 464.

The trial court is reversed and the petition to establish a conservancy district is dismissed.

GARRARD, J., concurs.

HOFFMAN, J., concurs in result.