ESTATE OF David N. MARINE, Deceased, William H. Price, II and Alice B. Nily, Personal Representatives, Petitioner–Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 92–1195.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 3, 1992.

Decided March 30, 1993.

Jeffrey B. Maletta, Kirkpatrick & Lockhart, Washington, DC, for appellant.

Kenneth W. Rosenberg, Tax Div., U.S. Dept. of Justice, Washington, DC (James A. Bruton, Acting Asst. Atty. Gen., Gary R. Allen, Kenneth .L. Greene, Charles Bricken, on the brief), for appellee.

Before PHILLIPS, Circuit Judge, and SPROUSE and CHAPMAN, Senior Circuit Judges.

**OPINION**

CHAPMAN, Senior Circuit Judge:

This appeal, by the estate of David N. Marine, from a decision by. the United States Tax Court, raises the issue of whether the discretion vested in Marine's personal representatives by a codicil to Marine's will, which allowed the representatives to make posthumous gifts to certain individuals who contributed to Marine's well-being or were helpful to him, made the charitable remainder unascertainable and not deductible as a charitable gift.

We agree that there was discretion to divert the remainder to noncharitable beneficiaries, and we affirm.

**I.**

David N. Marine, M.D. was educated at Princeton University and at the School of Medicine of Johns Hopkins University. · In 1970, at the age of 46, Marine left a successful career in internal medicine and retired to his home in Oxford, Maryland.

In the succeeding years Marine suffered the increasingly debilitating effects of his chronic alcoholism. During his decline Ma-rine, who had no close family members, was cared for by Dr. Johannes Bartels an old friend from medical school. As alcoholism diminished Marine's mental and physical condition, Bartels became concerned about Marine's ability to handle his financial affairs. Bartels filed a petition in state court to have a guardian appointed. Bartels and attorney Waller S. Hairston were appointed as guardians for Marine. Hairston was later replaced as a guardian by his law partner William H. Price, II.

On May 9, 1981 Marine executed a will containing a number of specific bequests including $5,000 to his longtime housekeeper, Mary Ann Whitby. The residue of his estate was to be divided equally between Princeton University and Johns Hopkins University.

On August 21, 1982 Marine executed a codicil to the will which deleted the gift to Whitby and added a new clause which read as follows:

*EIGHTH:* ·I empower my Personal Representatives, in their sole and absolute discretion, to compensate persons who have contributed to my well-being or who have been otherwise helpful to me during my lifetime by allocating to each of them such items of tangible personal property, or by transferring securities, or by giving them cash, or any combination of tangible personal property, securities or cash, as my Personal Representatives determine is a fair bequest for services rendered. My Personal Representatives shall take into account the length and nature of such services and the spirit with which such services were rendered on my behalf throughout the period of such contribution to my well-being. No single bequest, however, shall exceed one percent (1%) of my gross probate estate, but may be considerably less. The decision of my Personal Representatives as to both the amount of a bequest and what it shall consist of shall be final.

The tax court found that Marine executed the codicil partly as an incentive to induce his longtime housekeeper to stay in his employ. It found he was also motivated by a desire to reward others who had or might

yet provide services to him during his lifetime. Marine died on November 14, 1984.

The will and the codicil were filed for probate with the Orphans' Court for Talbot County, Maryland. William H. Price, II and Alice B. Nily, a longtime friend of Marine, were appointed personal representatives. In accordance with Marine's will and codicil, they made bequests to the housekeeper, Ms. Whitby, and Bartels, Marine's friend and guardian. Whitby received $10,000 and Bartels received $15,000. These were the only bequests made under the discretion provided in paragraph *Eighth* of the codicil.

On July 23, 1985 Price and Nily filed the federal estate tax return. It listed a gross estate of $2,594,455.49 and a deduction of $2,105,081.12 for the residue bequeathed to Princeton and Johns Hopkins.

In a letter dated July 19, 1988 the Commissioner of Internal Revenue ("the Commissioner") notified the estate that it was disallowing the deduction for the charitable bequest to the schools. The notice stated:

It is determined that on the date of death the value of any beneficial interest in property transferred to charity was not then presently ascertainable, and even if such interest had been ascertainable, the legatee, devisee, donee or trustee was empowered to divert the entire property to a use which would have rendered it not deductible had it been directly so bequeathed, devised, or given by decedent. Therefore, the indicated charitable deductions are not allowable.

On October 17, 1988 the personal representatives filed a petition challenging the Commissioner's determination. After a trial in the tax court the deficiency was affirmed, and the estate appeals.

## II.

Any testamentary gift to "any corporation organized and operated exclusively for ... scientific ... or educational purposes" may be deducted from the gross taxable estate. 26 U.S.C. § 2055(a)(2) (1988).

There is no dispute that Princeton University and the Johns Hopkins University are both legitimate recipients of § 2055(a)(2) gifts. To be deductible as a charitable gift, the value of a testamentary remainder interest must be "presently ascertainable, and hence severable from the non-charitable interest." Treas.Reg. § 20.-2055-2(a) (as amended in 1986).

The Supreme Court addressed the question of ascertainability in *Ithaca Trust Co. v. United States*, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929), and upheld a deduction for the remainder of a trust dedicated to charity even though the trustees were authorized to invade the corpus if necessary to "maintain [the widow] in as much comfort as she now enjoys."

Justice Holmes writing for the Court stated:

The principal that could be used was only so much as might be necessary to continue the comfort then enjoyed. The standard was fixed in fact and capable of being stated in definite terms of money. It was not left to the widow's discretion. The income of the estate at the death of the testator, and even after debts and specific legacies had been paid, was more than sufficient to maintain the widow as required. There was no uncertainty appreciably greater than the general uncertainty that attends human affairs.

*Id.* at 154, 49 S.Ct. at 291. Because there was a fixed standard, the Court found that the remainder was ascertainable at the date of death and the charitable remainder was deductible.

Ascertainability at the date of death of the amount going to charity is the test. To be "presently ascertainable" the power of the trustee to divert the corpus from the charities must be restricted by a fixed standard. In *Merchants Bank of Boston, Executor v. Commission of Internal Revenue*, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 (1943), the Court was faced with a will which created a trust, with the income going to the widow for her life, and upon her death all but $100,000 of the principal was to pass to certain charities. The trustee was authorized to invade the corpus,

at such time or times as my said trustee shall in its sole discretion deem wise and

proper for the comfort, support, maintenance, and/or happiness of my said wife, and it is my wish and will that in the exercise of its discretion with reference to such payments from the principal of the trust fund to my said wife, May L. Field, my said trustee shall exercise its discretion with liberality to my said wife, and consider her welfare, comfort and happiness prior to claims of residuary beneficiaries under this trust.

*Id.* at 257–58, 64 S.Ct. at 110.

The Court held that the extent to which the principal might be used was not restricted by a fixed standard, and

Introducing the element of the widow's happiness and instructing the trustee to exercise its discretion with liberality to make her wishes prior to the claims of residuary beneficiaries brought into the calculation elements of speculation too large to be overcome, notwithstanding the widow's previous mode of life was modest and her own resources substantial. We conclude that the Commissioner properly disallowed the deduction for estate tax purposes.

320 U.S. at 263, 64 S.Ct. at 112.

There is no fixed standard that can be applied to the discretion given to Marine's personal representatives. They had "sole and absolute discretion, to compensate persons who have contributed to my well-being or who have been otherwise helpful to me during my lifetime." There is no limit as to the number of persons who may be compensated, and there are no standards for determining and measuring such imprecise elements as ."contribution," "my well-being" and "have been otherwise helpful to me during my lifetime." What would be considered a "contribution" to Marine's "well-being?" How large must the contribution be, and over what period of time must it have been made? How would the personal representatives define "helpful?" Would helpfulness during his last illness be rewarded at a higher rate than helpfulness during his infancy or childhood? Dr. Marine lived 60 years and there must have been many persons "helpful" to him in different degrees throughout his life. The number of such individuals has no limit and a standard for measuring "contribution," "well-being" and "helpful" does not exist. This is similar to the problem created by the "widow's happiness" in *Merchants Bank, supra.* These elements are uncertain and cannot be measured with any precision, and therefore they make the amount going to charity unascertainable at the time of death. The fact that only two persons received payments under Paragraph Eighth is of no moment, because this could not be determined at the time of death so as to affect ascertainability. *Henslee, Collector of Internal Revenue v. Union Planters National Bank & Trust Co,* 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259 (1949).

Our court has considered the question of ascertainability in *Commissioner v. Robertson's Estate,* 141 F.2d 855 (4th Cir.1944), and *Greer v. United States,* 448 F.2d 937 (4th Cir.1971). Marine's estate argues that the powers given to the personal representatives in the present case are no broader than the powers given to the *Greer* and *Robertson* trustees, which we found were ascertainable. These opinions are distinguishable. The discretion of the *Greer* and *Robertson* trustees was limited to the needs and prior life-styles of the beneficiaries and followed the reasoning of *Ithaca Trust Co., supra.* In *Robertson,* we gave deference to the factual finding of the tax court that "the possibility that the charitable bequests would fail or be diminished was so remote as to be nil." 141 F.2d at 858. In *Greer,* the government conceded:

that the trustees' power to pay principal to the plaintiff is limited by an ascertainable standard—plaintiff's previous living standard—and hence there is no argument that the deductibility of the charitable remainder is destroyed by the power of invasion.

448 F.2d at 944. It is the lack of a definite standard that makes the amount of the charitable bequest under the Marine will uncertain and unascertainable.

### III.

We hold that the language of the codicil, giving the personal representatives "sole

and absolute discretion" to reward those who had been helpful to Marine during his life, established no real standards. The personal representatives had virtually unlimited authority as to the number of gifts, although the amount of each bequest was limited to one percent of the corpus. Since the number of such bequests was unlimited and a standard for determining the amount of a bequest was uncertain, the amount of the charitable bequest could not be ascertained at the time of death and the deduction is not available. The tax court was correct in its determinations.

AFFIRMED.