In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2357

Estate of Kenneth E. Starkey,

Plaintiff-Appellant,

v.

United States of America,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 98 C 343--Larry J. McKinney, Judge.

Argued February 25, 2000--Decided August 17, 2000

Before Bauer, Ripple, and Manion, Circuit Judges.

Manion, Circuit Judge. Kenneth Starkey was apparently both financially successful and generous. As he neared death, he made out his last will and testament and set up a charitable trust. These documents were drafted by his attorney son, who had little or no experience drafting such instruments, and the inartful language caused problems. The Internal Revenue Service concluded that the charitable trust Mr. Starkey created did not qualify for a charitable deduction. As a result, it denied the Estate a charitable deduction worth well over one million dollars. This resulted in an estate tax deficiency of over one half million dollars. The district court entered summary judgment in favor of the IRS in the Estate's suit to recover a tax refund. We hold that the documents, while inartfully drafted, adequately demonstrate that Mr. Starkey intended to create a charitable trust that qualifies for the charitable deduction. We therefore reverse the district court entry of summary judgment in favor of the IRS./1

I. Background

Kenneth Starkey's will created an educational trust for his grandchildren and a charitable trust. Section 5.02 of the will, the provision at issue, instructed the trustees of the charitable

trust to distribute the income as follows:

Half of the income from the trust is to go to Lawndale Community Church in Chicago, Illinois provided that Wayne Gordon is still the pastor of it at the time of my death and that church will receive this until the time that he is no longer pastor. The Trustees are to manage the property of the Trust for the benefit of this beneficiary, missionaries preaching the Gospel of Christ, and Milligan College.

(Emphasis added.) Section 5.03 authorized the trustees to distribute the net income or corpus of the trust to or for the benefit of a beneficiary "at any time and from time to time as the Trustees deem advisable." One week later, Mr. Starkey executed the following codicil to his will:

My Last Will and Testament in Items IV and V, created two trusts, the former an educational trust and the latter a charitable trust. My Last Will and Testament further provided that the trusts would eventually end even though they were educational and charitable in nature and therefore not subject to the Rule against Perpetuities twenty-one years after the death of my last descendant alive at the time of my own demise. My last Will and Testament did not dispose of the residue of the trusts upon the occurrence of the terminating events. I specifically leave the residues of both trusts to Milligan College.

Mr. Starkey died about three weeks later. The Estate claimed a charitable deduction of about $1.3 million on its federal estate tax return for the amount Mr. Starkey had left to the charitable trust and asked the IRS to determine that the trust was exempt from taxation. The IRS declined to do so. It noted various defects in the trust instrument and issued a directive on how the Estate might remedy them. See Estate of Starkey v. United States, 58 F. Supp.2d 939, 944 (S.D. Ind. 1999).

In response, the Estate petitioned the state probate court to amend Section 5.02 of the will to allow the trustees, in their discretion, to distribute trust income to eight specific beneficiary groups (in effect replacing the "missionaries" phrase in Section 5.02 with the eight specific groups). The motion stated that the groups "all fit the description of those intended by the testator to benefit from this trust, "[Lawndale Community Church], missionaries preaching the Gospel of Christ, and Milligan College." The Estate then filed an amended petition stating that the part of Section 5.02

referring to "missionaries preaching the Gospel of Christ" had "created confusion as to whether the phrase . . . defines the beneficiary Lawndale Community Church or whether missionaries preaching the Gospel of Christ creates a [separate] class of beneficiaries." The amended petition no longer sought to substitute specifically named groups for the "missionaries" phrase; it retained the phrase and argued that it was meant simply to describe the Lawndale Community Church. The Estate requested the state court to construe the phrase accordingly.

In the verified petition, Mr. Starkey's son stated that the Lawndale Community Church was well known for its missionary program and that, in fact, its missionary program was the only such program his father supported. The Estate also offered the testimony of Dr. Lynn Franken, a former associate dean of the College of Arts and Sciences at Butler University, who received her doctorate in English language and literature. Dr. Franken is trained as a grammarian, someone who studies the relationship between words and meaning. She opined that the "missionaries" phrase did not create a separate class of beneficiaries, but merely described the Lawndale Community Church. The probate court agreed and construed the phrase "missionaries preaching the Gospel of Christ" in Section 5.02 "as merely descriptive of Lawndale Community Church" and "as not creating a separate class of beneficiaries to which the trustees could distribute income or corpus."

The next day the IRS issued the Estate an estate tax deficiency in the amount of $520,178 (plus penalties). Despite the probate court's construction of the will, the IRS maintained that the will created three trust beneficiaries: the Lawndale Community Church, a group of missionaries, and Milligan College. The IRS thus disallowed the Estate a charitable deduction because the trust assets were split between charitable and noncharitable beneficiaries (concluding that while the Lawndale Community Church and Milligan College were both qualified charities, a group of unknown missionaries was not) and the amount of the charitable bequest was unascertainable.

Shortly thereafter, the Estate petitioned the probate court to appoint a guardian ad litem to represent the interests of the unknown "missionaries preaching the Gospel of Christ" so they could appeal the probate court's ruling that they--whoever they might be--are not beneficiaries. The Indiana Court of Appeals, in an unpublished opinion, affirmed the ruling of the probate court. It held that the

"missionaries" phrase "is most logically interpreted in the context of the will as standing in apposition to, and describing, the Lawndale Community Church." The guardian sought transfer to the Indiana Supreme Court, but it declined to hear the case.

After the state court proceedings concluded, the Estate paid the assessment and filed a refund claim with the IRS. The Estate claimed that the trust qualified for a charitable deduction because in his will, as interpreted by the state courts, Mr. Starkey had intended to create only two beneficiaries (the Lawndale Community Church and Milligan College), both of which are charities. The IRS disallowed the refund claim, and the Estate filed this action against the United States under 28 U.S.C. sec. 1346(a)(1) (allowing taxpayers to sue for relief from erroneously assessed taxes).

Both sides moved for summary judgment. The district court framed the issue as whether Mr. Starkey had "intended that the portion of his estate transferred to the [charitable] trust would be used by the trustees exclusively for charitable purposes, and whether the language he used in the grant to the trust restricted the trustees to such use . . . ." Estate of Starkey, 58 F. Supp.2d at 955. The district court held that the probate and appellate courts' decisions did not bind it, and it was only required to give them "proper" weight. The court determined that "proper" was not much because the probate court proceedings were not adversarial due to the absence of the IRS. Id. at 951. Yet, although the United States received notice of both the probate and appellate proceedings, it did not contest them or even appear. The district court disagreed with the state courts' interpretation of the "missionary" phrase and concluded that Mr. Starkey more likely intended to benefit a group of missionaries in addition to the church and the college. Id. at 956-57. Because the trustees had the discretion to distribute an undesignated amount of trust corpus or income to a group of "missionaries" potentially for personal purposes, the court held that Mr. Starkey had failed to create a charitable trust. Id. at 957-58. The district court ruled that the Estate was not entitled to a charitable deduction and entered judgment for the Government. The Estate appeals this ruling.

II.  Discussion

We review a grant of summary judgment de novo. Miller v. American Family Mut. Ins. Co., 203 F.3d 997, 1003 (7th Cir. 2000). The IRS's calculation of tax assessments is presumed to be correct, and

the taxpayer bears the burden of rebutting this presumption and proving he is entitled to a refund. United States v. Janis, 428 U.S. 433, 440 (1976).

A. Relevant Tax Principles

The Internal Revenue Code imposes a tax "on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States." 26 U.S.C. sec. 2001(a). A decedent's gross estate includes "the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated", id. at sec. 2031(a), and the value of any property interests the decedent has transferred (including by trust) within three years of his death (with some exceptions). Id. at sec. 2035. A decedent's taxable estate is determined by deducting from the gross estate transfers for public, charitable or religious uses (among other things). Id. at sec. 2055(a). The entire amount transferred to a trust for the benefit of a qualified charity is deductible. Id. at sec. 2055(a)(3)./2

To qualify for the charitable deduction, the charitable bequest must be ascertainable at the time of the transfer. Estate of Marine v. Commissioner of Internal Revenue, 990 F.2d 136, 138 (4th Cir. 1993) ("Ascertainability at the date of death of the amount going to charity is the test."). If a will provides a trustee with discretion to distribute trust assets to charities and to individuals for their personal use, the amount bequeathed to the charities might not be ascertainable at the time of the transfer. See Merchants Nat. Bank of Boston v. Commissioner of Internal Revenue, 320 U.S. 256, 257-58, 263 (1943); see also Estate of Marine, 990 F.2d at 138-39. Such a trust, where the assets are "split" between charitable and noncharitable beneficiaries, is known as a "split-interest" trust. See 26 U.S.C. sec. 2055(e)(2). With such a trust, the estate can only take a charitable deduction if the charitable interest of the trust is presently ascertainable. See id. at sec.sec. 2055(e)(2)(A) & (B), 2055(e)(3); see also Treas. Reg. sec. 20.2055-2(a) ("If a trust is created or property is transferred for both a charitable and a private purpose, deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the noncharitable interest.").

The will's codicil clearly states that Mr. Starkey intended to set up a charitable trust, and the IRS acknowledges that this was indeed his intent. Its dispute with the Estate is over the type of charitable trust he intended to create

and, more specifically, whom he intended to benefit. The IRS acknowledges that if Mr. Starkey intended the "missionaries" phrase to create two beneficiaries (Lawndale Community Church and Milligan College, both of which are qualified charities), then the value of the charitable interest would be ascertainable and hence deductible. In that case, the trust would not be a split-interest trust because both the trust beneficiaries would be qualified charities and the trust assets could only be used for their benefit. As a result, the charitable portion of the trust would be ascertainable (it would be the entire value of the trust)./3 If, however, Mr. Starkey intended to benefit a group of missionaries in addition to the church and the college, the IRS argues that then Mr. Starkey will have created a split-interest trust with both charitable and noncharitable beneficiaries. In that case the trust assets would not have been specifically divided among the charitable and noncharitable beneficiaries. Because the charitable portion of the trust would thus not be ascertainable, the Estate would not qualify for a charitable deduction. See Treas. Reg. sec. 20.2055-2(a). We agree with the IRS that this is the "ultimate issue" and thus must now determine whom Mr. Starkey intended to assist financially in preaching the Gospel of Christ, and if the will sufficiently expresses his intent.

B.   Kenneth Starkey's Probable Intent

   Both parties agree that Indiana law governs our analysis of Mr. Starkey's will. Estate of Bowgren v. Commissioner of Internal Revenue, 105 F.3d 1156, 1161 (7th Cir. 1997). In Indiana, the primary goal in interpreting a will is to determine and give effect to the testator's intent as expressed in the will, and determining this intent is a question of law. Gladden v. Jolly, 655 N.E.2d 590, 592 (Ind. Ct. App. 1995); Hershberger v. Luzader, 654 N.E.2d 841, 842 (Ind. Ct. App. 1995). The Estate notes that the probate court determined that Mr. Starkey intended the charitable trust to have only two beneficiaries, and it argues that the district court should have adopted this determination of Mr. Starkey's intent because it was affirmed by the Indiana Court of Appeals, "the highest Indiana Court which has addressed the issue."

   The Supreme Court has made clear that we are not bound by the probate court's decision: "where the federal estate tax liability turns upon the character of a property interest held and transferred by the decedent under state law, federal authorities are not bound by the determination made of such property interests by a state trial court." Commissioner of Internal

Revenue v. Estate of Bosch, 387 U.S. 456, 457 (1967). Intermediate state appellate decisions, however, are presumed to be a correct indicator (or "datum") of state law which we may not disregard unless other decisions convince us "that the highest court of the state would decide otherwise." Id. at 465 (emphasis omitted). But Bosch also tells us that if a state's supreme court has not resolved an issue, we have to apply what we "find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State." Id.

While the Supreme Court did not expand upon what it meant by "proper regard," we note that the Indiana Court of Appeals did not publish its decision. As a result, it is questionable whether we may simply presume that it correctly indicates Indiana law--whether we may "properly regard" it as precedent--even though it is, of course, directly on point. See Ind. R. App. P. 15(A)(3) (unpublished decisions shall not "be regarded as precedent nor cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel or the law of the case."); Horn v. A.O. Smith Corp., 50 F.3d 1365, 1370 n.10 (7th Cir. 1995) (quoting Ind. R. App. P. 15(A)(3)) ("Although admittedly on point, Colglazier is an unpublished memorandum opinion, and Indiana's rules make plain that such opinions shall not 'be regarded as precedent . . . .'"). But while an unpublished opinion is normally not presumed to be an indicator or "datum" of state law as a published (precedential) decision would be, Bosch, 387 U.S. at 465, we note that arguably (although no one seems to have made the argument) it is the law of the case, which is one of the exceptions under Ind. R. App. P. 15(A)(3) for when unpublished decisions "may be regarded as precedent." Supra. Anyway, regardless of the extent to which it may be viewed as a "datum" of state law, we are persuaded by the Indiana Court of Appeals' analysis in this matter.

The Court of Appeals concluded that the "missionaries" phrase was ambiguous and then construed this ambiguity. A will is ambiguous if it is reasonably susceptible to different interpretations. Hauck v. Second Nat'l Bank of Richmond, 286 N.E.2d 852, 863 (Ind. Ct. App. 1972). In this case, the Estate contends that the "missionaries" phrase is unambiguous and modifies "this beneficiary" (which everyone agrees refers to the Lawndale Community Church). This is an entirely reasonable grammatical construction. See In re City of Fort Wayne's Petition to Establish a Conservancy Dist., 484 N.E.2d 584, 589 (Ind. Ct. App. 1985) ("in the phrase 'freeholder . . . , who owns land,' the clause 'who owns land' is a descriptive clause. Note the clause is set off

from the antecedent noun by a comma indicating a rather loose relationship to 'freeholder.'")./4 The IRS, though, seems to contend that this phrase is ambiguous and that it should be construed to denote a second beneficiary in a series of three beneficiaries. On its face, this construction is also plausible. Cf. Pleasureland Museum, Inc. v. Dailey, 422 N.E.2d 754, 756 (Ind. Ct. App. 1981) (In "the phrase 'stores and shops'. . . the words are connected with the conjunctive 'and,' and are set apart from the other items in the [series] by a comma."). Because the "missionaries" phrase is reasonably susceptible to different meanings, we agree that it is ambiguous. As a result, and like the Indiana Court of Appeals, we must use rules of construction to determine Mr. Starkey's intent. See id. (ambiguity must exist before a court may construe a will)./5

Rules of grammar may be used to construe a will. See Donahue v. Watson, 411 N.E. 741, 750 (Ind. Ct. App. 1980); Nichols v. Alexander, 152 N.E. 863, 864 (Ind. Ct. App. 1926) (en banc); cf. Faris Mailing, Inc. v. Indiana Dept. of State Revenue, 557 N.E.2d 713, 716 (Ind. Tax 1990) ("rules of grammar can be used to construe an ambiguous statute"). We are reluctant, however, to hang our hat on the cases the parties have cited to support their competing interpretations of the "missionaries" phrase (modifier versus an item in a series). In the case the Estate cites, the court was determining what a phrase modified; it was not passing upon the question presented in this case: whether a phrase is a modifying phrase or a separate item in a series. See Donahue (and other cases), note 4, supra. And the case the IRS cites, Cape v. State, 400 N.E.2d 161, 164 (Ind. Ct. App. 1980), also did not address this specific issue. See also Pleasureland Museum, Inc., supra.

However, Dr. Franken (the English professor whom the Indiana courts relied upon as a grammatical aid) did address this precise question. She concluded that the "missionaries" phrase most likely modified "this beneficiary" because for the phrase to denote an item in a series would be "inconsistent . . . with the parity of value generally intended by such a seriatim listing. It is not a reasonable interpretation that the decedent could have intended an elaborate item in the middle surrounded by two very specific and short items." She also rejected the notion of a seriatim listing because "[r]ead as three items in a series, the phrase fails to produce three distinct categories." Dr. Franken's expert opinion provides a sound grammatical reason for the Indiana Court of Appeals to conclude "that the phrase 'missionaries preaching the Gospel of

Christ' is most logically interpreted in the context of the will as standing in apposition to, and describing, the Lawndale Community Church."

Furthermore, all the evidence indicates that Kenneth Starkey intended to benefit the missionary program of the Lawndale Community Church, not any and all Christian missionaries./6 Specifically, his son stated in the Estate's verified petition in state court that the Lawndale Community Church is well known for its missionary programs that preach the Gospel of Christ, and its missionary program was the only such program his father was known to support.

This case is thus similar to Chappell v. Missionary Society of Churches of Christ in Indiana, 29 N.E. 924 (Ind. Ct. App. 1892). Ms. Chappell bequeathed $500 to the "Christian Missionary Society of this state." The Missionary Society of the Churches of Christ in Indiana filed a petition claiming to be the missionary society listed in the will. The Society averred that Ms. Chappell was a member of the Church of Christ in Indiana. Id. The Society also asserted that it was the only missionary society in Indiana affiliated with Ms. Chappell's church, and that it was commonly known as the "Christian Missionary Society" of this state. Id. at 924-25. Relying on the Indiana Supreme Court's decision in Skinner v. Harrison Tp., 18 N.E. 529 (Ind. 1888), the Chappell court held that because the ambiguity concerned the "object of the testator's bounty," the ambiguity was latent, and therefore it was proper for the trial court to rely on extrinsic evidence in determining that Ms. Chappell intended to benefit the Society. 29 N.E. at 925./7

The Indiana Court of Appeals in this case applied Chappell and observed that "there would appear to be . . . no persons or corporations in existence who precisely answer to the description 'missionaries preaching the Gospel of Christ.'" (Emphasis in original.) "Therefore," it concluded, "the trial court did not err in admitting extrinsic evidence in determining the testator's intention regarding the object of his bounty." The Court of Appeals' analysis was consistent with Indiana law. See Chappell and note 6, supra. The evidence about the missionary program Mr. Starkey supported was not introduced to create a new instrument or vary the will's terms. See Hauck, 286 N.E.2d at 862. Rather, the ambiguity in Section 5.02 "was easily explained by resort to extrinsic evidence." Superbird Farms, Inc. v. Perdue Farms, Inc., 970 F.2d 238, 244 (7th Cir. 1992) (emphasis added) (applying Indiana law), overruled on other grounds by

Medcom Holding Co. v. Baxter Travenol Lab., Inc., 106 F.3d 1388, 1397 n.3 (7th Cir. 1997). This evidence compels us, as it did the Indiana probate court and Court of Appeals, to conclude that because Mr. Starkey intended to benefit the missionary program of the Lawndale Community Church, the "missionaries" phrase modifies or describes "this beneficiary" (the Lawndale Church), as opposed to listing another class of beneficiaries.

The IRS offers three reasons why the "missionaries" phrase should be interpreted as referring to a distinct class of beneficiaries. It first argues that it does not make sense to interpret the "missionaries" phrase as modifying the Lawndale Church ("this beneficiary") because: a) Mr. Starkey already described the church in the first part of Section 5.02 by specifying its pastor (Wayne Gordon) and its location (Chicago, Illinois); and b) the church is a singular noun while "missionaries preaching the Gospel of Christ" is plural. Dr. Franken, however, explained away both of these asserted difficulties with the state courts' interpretation of Section 5.02: "Read as an appositive renaming the noun 'beneficiary,' the phrase 'missionaries preaching the Gospel of Christ' characterizes the Lawndale Community Church in a way that explains and justifies the nature of the bequest."

The IRS next argues that the "spendthrift clause" in Section 5.05 "serves no purpose if the only beneficiaries of the will were Lawndale Community Church and Milligan College, since those entities do not have a 'life' and are not subject to claims for alimony or spousal support. By contrast, the clause serves a purpose if the trustees are authorized to distribute trust assets to individual missionaries . . . ."/8 According to the IRS, the state courts' interpretation of the "missionaries" phrase would thus violate the principle that "in construing a will effect should if possible be given to every provision thereof and the will must not be interpreted to render any part meaningless". See Diaz v. Duncan, 406 N.E.2d 991, 1000 (Ind. Ct. App. 1980).

We disagree with the IRS that the state courts' interpretation of the phrase would render the spendthrift clause meaningless. The church is a (not-for-profit) corporation. Thus, under the Estate's interpretation of the phrase, the "spendthrift clause" would still protect the trust from claims of the Church's creditors. The clause would also protect the trust from claims for alimony from a former spouse of Wayne Gordon. Rev. Gordon is specifically referred to in the

will and, as pastor, he is either the perceived or actual leader of Lawndale Community Church. It is of course unusual for a testator to worry that a pastor might have his assets (or those over which he had some influence) subject to claims for alimony. But it is just as unusual for a testator to worry that Christian missionaries might have their assets subject to claims for alimony. See id. (Courts should not reject any provision "to which a reasonable effect can be given.") (emphasis added). These equally bizarre scenarios lead us to agree with the Estate that the "spendthrift clause" was most probably included because the will's drafter, Mr. Starkey's son, admittedly had little or no experience drafting wills and inserted the clause as boilerplate language from a form book.

In this situation, we will not reject the state courts' interpretation of the "missionaries" phrase even if it renders part of the "spendthrift clause" meaningless. Significantly, the often-quoted rule the IRS cites states that "if possible" a will should be interpreted to give effect to every provision. Id. Indiana courts have declined to apply this rule when doing so would thwart the testator's intent. See Matter of Estate of Walters, 519 N.E.2d 1270, 1272-73 (Ind. Ct. App. 1988) (citing principle from Diaz but then declining to give effect to the "mischievous words per stirpes" to thwart an intent which was otherwise clear: "We are of the opinion that its use was merely a legalistic flourish, devoid of any expression of intent."). Here, under either the Estate's or the IRS's interpretation, the phrase has little, if any, applicable meaning. The extrinsic evidence, however, is persuasive that the "missionaries" phrase means the Church. Using the "spendthrift clause" to create a separate class of beneficiaries, then, would thwart the testator's intent. We do not believe that the Indiana Supreme Court would agree with this use of Diaz. See Keplinger v. Keplinger, 113 N.E. 292, 293 (Ind. 1916) (after testator's intent has been ascertained, "ambiguous terms not reconcilable therewith may be disregarded.")./9

Lastly, the IRS argues that the state courts' construction of the "missionaries" phrase should be rejected because "the state court proceedings . . . were instituted for the sole purpose of decreasing the estate's tax liability." We have no doubt that they were; it is not unusual not to want assets, which have already been taxed, to be taxed again. This desire is not impermissible. The only inquiry here is whether Mr. Starkey intended to draft his will so as to permissibly reduce, or even avoid, his estate's tax liability. In this regard, the IRS candidly acknowledged at oral argument that Mr. Starkey

did not have an illegal intent. The charitable trust was not a "tax dodge." Mr. Starkey was not, for example, trying to shuffle money between family members to "shelter it" from tax while really keeping it within the family./10 His charitable intent, and his estate's attempt to implement it, were both perfectly permissible./11

III.  Conclusion

Dr. Franken's analysis of Section 5.02 of the will and the extrinsic evidence of Mr. Starkey's intent show that he intended his charitable trust to have only two beneficiaries (the church and the college). Because our objective in construing Mr. Starkey's will is to determine and give effect to his true intent, "rather than have that intent frustrated," Gladden, 655 N.E.2d at 592, we hold that "missionaries preaching the Gospel of Christ" in Section 5.02 of Kenneth Starkey's will modifies "this beneficiary" ("the Lawndale Community Church"). As so construed, the bequest to the trust qualifies for a charitable deduction under 26 U.S.C. sec. 2055(a)(3).

The judgment of the district court in favor of the defendant is REVERSED and the case is remanded for judgment to be entered in favor of the plaintiff.

/1 The IRS also denied the Estate a marital deduction it had claimed on its estate tax return. The Estate does not challenge this denial on appeal.

/2 "For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers to a trustee or trustees . . . but only if such contributions or gifts are to be used by such trustee or trustees . . . exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, such trust . . . would not be disqualified for tax exemption under section 501(c)(3) by reason of attempting to influence legislation, and such trustee or trustees . . . does not participate in, or intervene in . . . , any political campaign on behalf of (or in opposition to) any candidate for public office. Id.

/3 The IRS notes that the church and the college are qualified charities, and since trust assets could only be used for their benefit under this

interpretation of Mr. Starkey's will, the IRS agrees that the will would sufficiently limit the trustees' discretion. The IRS thus disagrees with the district court, which held that even if the "missionaries" phrase were interpreted simply to refer to the church, the bequest still would not qualify for a deduction because the will did not sufficiently restrict the trustees' discretion. See Estate of Starkey, 58 F. Supp.2d at 952, 955-57. We agree with the IRS that if the trust is interpreted to have only the two beneficiaries, then the trustees' discretion is sufficiently limited for the bequest to qualify for the charitable deduction.

/4 Cf. Spears v. State, 412 N.E.2d 81, 82 (Ind. Ct. App. 1980) ("Commas set off the modifying phrase 'by visible or audible means' . . . ."); Donahue v. Watson, 411 N.E.2d 741 (Ind. Ct. App. 1980) ("As an extension of the previous phrase the provision for surviving issue can only be read as a modification of the surviving child's interest."); Freigy v. Gargaro Co., 60 N.E.2d 288, 293 (Ind. 1945) ("The last phrase, set off by commas, modifies all of the preceding phrase . . . .").

/5 Before attempting to construe an ambiguity, a court must determine whether Mr. Starkey's "intent is clearly articulated in other provisions of the will." In re Estate of Grimm, 705 N.E.2d 483, 498 (Ind. Ct. App. 1999) (citing Pleska v. Zakutansky, 459 N.E.2d 745, 748-49 (Ind. Ct. App. 1984)). Other provisions of Mr. Starkey's will do not clearly indicate his intent with respect to the "missionaries" phrase.
/6 In Indiana, extrinsic evidence may be used to resolve a "latent" ambiguity but not a "patent" ambiguity. See McConnell v. Robbins, 140 N.E. 59, 61 (Ind. 1923); see also First Federal Sav. Bank of Ind. v. Key Markets, Inc., 559 N.E.2d 600, 607 (Ind. 1990). Unlike a "patent" ambiguity, a "latent ambiguity arises not upon the face of the instrument by virtue of the words used, but emerges in attempting to apply those words in the manner directed in the instrument." Hauck, 286 N.E.2d at 862. Thus, with a latent ambiguity, "introduction of extrinsic evidence merely completes the instrument by identifying its object or subject matter." Id. But with a patent ambiguity, where "the writing is too uncertain for a settled construction, admission of extrinsic evidence would, in effect, create a new instrument." Id. The ambiguity in this case is latent. It arose when the IRS attempted to apply the "missionaries" phrase to determine whom, if anyone, besides the church and the college could receive proceeds from the trust. Id.; see also Eckart v. Davis, 631 N.E.2d 494, 497 (Ind. Ct. App. 1994). Moreover, an ambiguity concerning

whom the testator intended to benefit is typically latent. See Hauck, 286 N.E.2d at 862; see also Huyler's v. Gas Appliance Supply Corp., 257 N.E.2d 831, 836 (Ind. Ct. App. 1970) (latent ambiguity exists when description "is shown to fit different pieces of property").

/7 The court stated that "[n]o principle is better settled than that parol evidence is admissible to remove latent ambiguities, and, when there is no person or corporation in existence precisely answering to the name or description in the will, parol evidence may be given to ascertain who were [the beneficiaries] intended by the testator." Id. (emphasis added).

/8 Section 5.05 provides that "[n]o interest under this instrument shall be transferable or assignable by any beneficiary or be subject during his life to the claims of his creditors or to any claims for alimony or for the support of his spouse."

/9 It is also difficult to believe that Mr. Starkey, who was very specific about which church was to benefit from his trust (the "Lawndale Community Church in Chicago, Illinois"), and about the conditions under which the church would be allowed to do so ("provided that Wayne Gordon is still the pastor of it at the time of my death"), would then turn around and give his money to unknown missionaries of whatever stripe--Baptist, Catholic, Mormon--without any real conditions (just that they preach "the Gospel of Christ").

/10 Indeed, because the money for the charitable deduction was (and is) clearly going outside the family one way or another, Mr. Starkey's relatives have nothing to gain or lose from the outcome of this case. The only people who stand to lose under the IRS's proposed construction are the charities themselves if half the trust corpus goes to the United States. We believe an Indiana court would not find this to be Mr. Starkey's intent. See Pleska, 459 N.E.2d at 749 ("The specificity of Peter's bequests supports a determination that he did not intend for his probate estate to be exhausted by the payment of [estate] taxes on the non-probate assets.").

/11 The IRS points out that the Estate initially petitioned the probate court to amend the will to substitute eight specific groups for "missionaries preaching the Gospel of Christ," stating that the groups "all fit the description of those intended by the testator to benefit from this trust, "[Lawndale Community Church], missionaries preaching the Gospel of Christ, and Milligan College." In light of this petition, the IRS argues that the Estate cannot now maintain

that Mr. Starkey intended the "missionaries" phrase merely to modify "this beneficiary." The Estate's course of action in this regard, though, is understandable. At this time, the Estate was still represented by Mr. Starkey's son, who did not have expertise in this area. He had been corresponding with the IRS about how the trust could qualify for a charitable deduction, and it was in response to a directive from the IRS that he filed the petition in question. The petition was effectively withdrawn when the Estate filed an amended petition in which the Estate represented that the "missionaries" phrase was descriptive. Under these circumstances, we do not deem the Estate's actions with the initial (superceded) petition as indicative of Mr. Starkey's true intent.