**ESTATE of Kenneth E. STARKEY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. IP 98–0343–C M/S.**

United States District Court, S.D. Indiana, Indianapolis Division.

April 26, 1999.

Stephen K. Miller, Cremer Miller & Burroughs, Indianapolis, IN, for plaintiff.

Kevin P. Jenkins, Tax Division–U.S. Dept. of Justice, Washington, DC, for U.S.

## ORDER

McKINNEY, District Judge.

This matter is before the Court on cross motions for summary judgment filed by the parties on December 9, 1998. At issue is whether the Estate of Kenneth E. Starkey (the "Estate") is entitled to a refund of estate taxes paid after the Internal Revenue Service (the "IRS") disallowed its claimed charitable and marital deductions. Also pending are two collateral motions, a motion to strike the testimony and report of plaintiff's expert witness, Dr. Lynn Franken, and a motion to compel responses to deposition questions, filed by defendant on March 31 and April 7, 1999, respectively. Because the Court has resolved all of the pending issues in this matter in its decision below, the collateral motions are deemed moot.

Having fully considered the arguments and evidence presented by both parties, and for the reasons given below, the Court **GRANTS** the defendant's motion for summary judgment with respect to all issues. The Estate's motion for summary judgment is correspondingly **DENIED**.

## I. BACKGROUND

On February 28, 1990, Kenneth E. Starkey ("Kenneth") died after suffering an acute heart attack, following a series of strokes. Def's Ex. 3, Certificate of Death. He was survived by his spouse, Norma Jeanne Starkey, 55, three daughters, Cynthia Starkey Robinson, 30, Theresa Carole Starkey, 27, Carrie Jeanne Starkey, 17, and a son, Christopher Kenneth Starkey ("Christopher"), 29. At the time of his death, Kenneth had accumulated close to four million dollars' worth of real and personal property, a portion of which he attempted to bequeath to a church in Chicago and a college in Tennessee. Kenneth turned to his son Christopher, who is an attorney, to prepare the necessary documents to fulfill his charitable intentions. *See* Plf's Ex. 2, Petition for Probate of Will and Issuance of Letters. Christopher was a solo practitioner in Fort Wayne at the time he drafted his father's will, and at no point did he claim to have any estate-planning expertise. *See In re Estate of Kenneth E. Starkey*, 49D08–9003–ES474, Transcript at 7–8. In addition to serving as the scrivener of the will, Christopher

was also appointed as its executor and served as the attorney for the estate from 1990 until March 20, 1996, when he signed a power of attorney and declaration of appointment of outside counsel. *See* Def's Ex. 19, "Power of Attorney and Declaration of Representative."

Kenneth's will was executed on January 27, 1990, and amended by a codicil executed on February 4, 1990. Compl., Ex. B; Def's Exs. 1, 2 (hereafter "Will"). According to the will, Kenneth bequeathed one-third of his estate to his wife. Will, Item III, 3.01. He also made specific devises to each of his four children, and bequeathed $400,000.00 to Christopher to be held in trust for the education of the "issue of Curt and Marianne Bannister, Cynthia Starkey Robinson, Christopher Kenneth Starkey, Theresa Carole Starkey, and Carrie Jeanne Starkey." Will, Item IV. Kenneth bequeathed the residue of the estate to his wife, three daughters and Christopher to be held in trust for certain designated charitable purposes. Will, Item V. For these reasons, the Estate claimed both marital and charitable deductions on its estate tax return, filed with the IRS on July 6, 1993. Def's Ex. 3, Form 706, United States Estate Tax Return (hereafter "Form 706"). The estate tax return had been due in November of 1990, and its lateness subjected the Estate to delinquency fees. *See* 26 U.S.C. 6075; 26 C.F.R. 20.6075–1; 26 U.S.C. § 6651.

In its 1993 tax return, the Estate listed Kenneth's total gross estate as $3,896,670.00, from which it claimed a total of $3,717,441.00 as allowable deductions, leaving a taxable estate of $179,229.00. Form 706, *ll.* 1–3. After adding back any taxable gifts given between December 31, 1976, and the date of Kenneth's death, the total adjusted taxable estate was $274,129.00. *Id., l.* 5. Based on that amount, the Estate claimed a tentative estate tax bill of $79,004.00. *Id., l.* 8. A unified credit of $192,800.00 is allowed against estate taxes imposed by the tax code for the benefit of the estate of every decedent, which credit may be adjusted downward under certain circumstances. *See* 26 U.S.C. § 2010(a), (c).

The Estate claimed an adjusted unified credit of $186,800.00. Form 706, *l.* 13. After deducting this credit from the tentative amount of its tax bill, the Estate reported that it owed no estate taxes. *Id., l.* 21.

Among the deductions claimed against the gross estate were the marital and charitable deductions at issue in this dispute. Specifically, the Estate claimed a total charitable deduction of $1,365,051.00, and a marital deduction of $1,298,890.00, based on the specific and residuary bequests in the Will. *Id.,* Scheds. M, O. The marital deduction included the value of one-half of the Starkey's residence in Indiana, the Florida condominium and its contents, and a 1989 Buick automobile, all of which were specifically included in the devise of one-third of Kenneth's estate to his wife. *Id.,* Sched. M. Included in the charitable deduction were amounts representing the present value of a trust established during Kenneth's lifetime, and an amount equivalent to the residuary of Kenneth's estate, which was intended for a "charitable trust" for religious purposes. Will, Codicil, Item I.

On June 26, 1996, the IRS issued a "Notice of Deficiency" to the Estate, detailing adjustments the agency made to the taxable estate and assessing $520,178.00 in estate taxes, as well as a late filing penalty of $130,045.00 (25% of the taxes owed). Def's Ex. 4; *see* 26 U.S.C. § 6651. Among those adjustments, the IRS disallowed the entire charitable deduction claimed as a result of the testamentary trust, as well as the deductions claimed for the Florida condominium, its contents and the automobile. Approximately one year later, on June 6 and July 31, 1997, the Estate paid the additional assessed taxes, along with the corresponding penalties and interest, totaling $1,166,638.34. Compl. Ex. H, IRS Form 843, Claim for Refund.

More than two years prior to receipt of the IRS deficiency letter, the Starkeys had attempted to obtain a determination of federal tax exempt status under

§ 501(c)(3) for the "charitable" trust created by Kenneth's will. In response to that application, the IRS sent a letter, dated February 14, 1994, in which it informed the "Kenneth E. Starkey Religious Trust Fund" that the IRS required more information before it could determine the trust fund's status under federal tax laws. Plf's Ex. 2 at 26, Letter from Annette Klear dated Feb. 14, 1994. According to the letter, the information required to complete the trust fund's application for exempt status included an amendment to its "organizational document," which would clearly reflect that the trust fund was organized for exempt purposes. The relevant portions of the required amendment are:

> Said organization is organized exclusively for charitable, religious, educational or scientific purposes, including, for such purposes, the making of distributions to organizations that qualify as exempt organizations under section 501(c)(3) . . . .
> No part of the net earnings of the organization shall inure to the benefit of, or be distributable to its members, trustees, officers or other private persons . . . .
> Upon the dissolution of the organization, assets shall be distributed for one or more exempt purposes within the meaning of section 501(c)(3) . . . .

Plf's Ex. 2 at 27. In addition to making the required amendments to the trust document, the trust fund was directed to show that the amended document was "filed with the appropriate probate court." *Id.*

The 1994 letter also advised the trust fund that it would not qualify under § 509(a)(3) of the Internal Revenue Code because it was not "prohibited from benefiting organizations other than those listed in the Trust." *Id.* Another deficiency was that the beneficiaries of the trust were not empowered to enforce the trust and compel an accounting. *Id.* at 28. Unless the required information was submitted to the IRS within a specified period of time, the trust fund would be designated as a private foundation. *Id.* To overcome these problems in the "trust instrument," the Estate filed a Motion to Amend Testamentary Trust with the Marion Superior Court on June 21, 1994. Def's Ex. 5, *In re Estate of Kenneth E. Starkey*, 49DO8–9003–ES 474, Motion to Amend. In it, the Estate sought to add the required language from the IRS's February letter to amend the "charitable trust contained in Item V of decedent's will," and to further modify the section by naming only specific beneficiary organizations and granting them the right to demand an accounting for the trust's income and assets. *Id.* Deleted from section 5.02 was the language at issue in this dispute, "missionaries preaching the Gospel of Christ." *Id.*

Neither party has provided the Court with documents that indicate the disposition of this motion by the Marion County Superior Court. However, the evidence submitted by the defendant includes subsequent correspondence between the Estate's attorney, Christopher, and an IRS attorney, P. Steven Ley, regarding the taxability of the bequest to the alleged religious charitable trust. Def's Ex. 5; Def's Reply Brf. in Further Supp. of its Mot. for Sum. J., Ex. 20, Decl. of P. Steven Ley. The result of that correspondence was that the IRS sought and obtained a National Office Technical Advice Memorandum on the issue of whether the charitable remainder interest in the residuary trust created by Kenneth's will would qualify for a charitable deduction from estate taxes. *Id.* The National Office concluded that it would not, and rendered a decision on or about May 1, 1995, after which Christopher continued to dispute whether the estate was entitled to the charitable deduction. *Id.* In a letter dated October 9, 1995, Christopher wrote to provide a "more detailed explanation as to why the estate is entitled to the charitable deduction." Def's Ex. 8. Christopher stated that the "overriding purpose of the gift is for religious purposes and hence qualifies." *Id.* After citing portions of § 2055 of the Internal Revenue Code, Christopher stated that the trust "does not engage in any such political activities, nor

do the beneficiaries," and asked that the Estate be allowed the charitable deduction. *Id.*

No subsequent activity was documented by either party until an Amended Petition to Amend Testamentary Trust and Petition to Construe Will was filed on March 20, 1996. Def's Ex. 9, *In re Est. of Kenneth E. Starkey,* 49DO8–9003–ES–474, Amended Petition; Plf's Ex. A to Compl. In that petition, which references the June 21, 1994, Motion to Amend Testamentary Trust, the Estate again sought to amend Item V of the will to include the required statutory language. *Id.* In addition, the Estate no longer substituted specifically-named organizations for the phrase "missionaries preaching the Gospel of Christ," but retained the phrase and argued that it was simply meant to describe the specific beneficiary, the Lawndale Community Church. *Id.* ¶¶ 3, 4. As requested by the Estate in this Amended Petition, the probate court held a hearing on the petition on June 25, 1996, at the close of which the court signed an order provided by the Estate construing the will as the Estate requested. In the order, the court found that Kenneth had intended the phrase "missionaries preaching the Gospel of Christ," merely as a description of the Lawndale Community Church, and it added the other statutorily-required language to the testamentary trust. Compl. Ex. C; Plf's Ex. 3, Transcript at 30.

The June 25, 1996, order construed the language in the second sentence of section 5.02 as not "creating a class of beneficiaries to which the trustees could distribute income or corpus." Compl. Ex. C, Order Amending Testamentary Trust and Construing Will, ¶ 1. Moreover, the probate court found that the *two* beneficiaries named in the testamentary trust were tax exempt, based on their current tax exempt determination letters from the IRS produced by the Estate. *Id.* ¶ 2. The trust was then amended to add sections 5.12, 5.13 and 5.14, which included the statutory language from the IRS's February 14, 1994, letter in response to the trust fund's application for tax exempt status. *Id.* ¶ 3.

Finally, the court stated that "reformation of the terms of the charitable trust into the form of a qualified charitable trust so as to bring it into compliance with [the Internal Revenue Code] would not prejudice the interest of any beneficiary but … would be beneficial to such decedent's estate and to all of the beneficiaries of the charitable trust." *Id.* ¶ 4. The court concluded by stating that the trust "shall in all ways be considered a charitable trust." *Id.* ¶ 5.

After the probate court's ruling on the Estate's petition to amend the testamentary trust, the Estate sought the appointment of a *guardian ad litem* for the "missionaries preaching the Gospel of Christ," who was subsequently appointed by the probate court and compensated by the Estate. Compl. Ex. D, Petition to Appoint Guardian Ad Litem, Ex. D, Order Dated July 23, 1996. The *guardian ad litem,* Paul G. Roland ("Roland"), filed an appeal with the Indiana Court of Appeals on October 16, 1996, following which he briefed the issues of whether the Marion County court had committed error when it admitted "extrinsic evidence" in the form of testimony from an "expert witness" regarding the meaning of the "missionaries" phrase in section 5.02, and whether the court erred in finding that Item V, section 5.02 of the will created a single beneficial interest in the Lawndale Community Church, rather than creating a separate class of beneficiaries consisting of the "missionaries preaching the Gospel of Christ." Compl. Ex. E, App't's Brf. at 4, 5. In an order dated February 13, 1997, the Indiana Court of Appeals affirmed the judgment of the probate court, finding no error in admitting the testimony of the Estate's expert witness or in the interpretation of the disputed language in the will. Compl., Ex. F, Memorandum Decision, *Missionaries Preaching the Gospel of Christ v. Estate of Kenneth E. Starkey,* 49AO2–9610–CV654 at 5. The Indiana Supreme Court denied the missionaries' petition to transfer on May 16, 1997. Compl., Ex. G.

After obtaining these rulings from the Indiana courts, and paying the assessed estate taxes in June and July of 1997, the Estate filed, in late September or early October of 1997, a claim with the IRS for a refund of the taxes, penalties and interest it had paid. Compl. ¶ 15; Ans. ¶ 15. The IRS denied the estate's claim for a refund in a letter dated January 21, 1998. Def's Ex. 3(*l*). This action was filed on March 10, 1998, in which the Estate seeks judgment against the United States of America in the amount of the estate taxes, penalties and interest paid in 1997 as a result of the disallowed deductions and assessed tax deficiency.

## II. STANDARDS

### A. Summary Judgment

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). An issue is genuine only if the evidence is such that a· reasonable finder of fact could return a verdict for the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A disputed fact is material only if it might affect the outcome of the suit in light of the substantive law. *Id.*

The moving party has the initial burden to show the absence of genuine issues of material fact. *See Schroeder v. Barth*, 969 F.2d 421, 423 (7th Cir.1992). This burden does not entail producing evidence to negate claims on which the opposing party has the burden of proof. *See Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 & n. 3 (7th Cir.1994). The party opposing a summary judgment motion bears an affirmative burden of presenting evidence that a disputed issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Scherer v. Rockwell Int'l Corp.*, 975 F.2d 356, 360

(7th Cir.1992). The opposing party must "go beyond the pleadings" and set forth specific facts to show that a genuine issue exists. *See Hong v. Children's Mem. Hosp.*, 993 F.2d 1257, 1261 (7th Cir.1993), *cert. denied*, 511 U.S. 1005, 114 S.Ct. 1372, 128 L.Ed.2d 48 (1994). This burden cannot be met with conclusory statements or speculation, *see Weihaupt v. American Med. Ass'n*, 874 F.2d 419, 428 (7th Cir. 1989), but only with appropriate citations to relevant admissible evidence. *See* Local Rule 56.1; *Brasic v. Heinemann's Inc., Bakeries*, 121 F.3d 281, 286 (7th Cir.1997); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923–24 (7th Cir.1994). Evidence sufficient to support every essential element of the claims on which the opposing party bears the burden of proof must be cited. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a summary judgment motion, a court must draw all reasonable inferences "in the light most favorable" to the opposing party. *Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 392 (7th Cir. 1992). If a reasonable factfinder could find for the opposing party, then summary judgment is inappropriate. *Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir.1992). When the standard embraced in Rule 56(c) is met, summary judgment is mandatory. *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Shields Enters.*, 975 F.2d at 1294.

### B. Tax Refund Claims

 Section 7422 of the Internal Revenue Code provides a taxpayer with the limited right to bring a civil suit in federal courts "for the recovery of an internal revenue tax alleged to have been erroneously or illegally assessed or collected," or for any other sum alleged to have been wrongfully collected or assessed. 26 U.S.C. § 7422(a). Before such a suit may be brought, however, the taxpayer must have paid the assessed tax and filed a claim for a refund or credit. *Id.; Flora v.*

*United States*, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960); *Goulding v. United States*, 929 F.2d 329 (7th Cir.1991) (claim for refund is jurisdictional); *McMillen v. United States*, 960 F.2d 187 (1st Cir.1991); *Parkinson v. United States*, 614 F.Supp. 105 (S.D.Ohio 1985). A tax refund suit may only be brought against the United States and not against any of its officers, agents, or employees. 26 U.S.C. § 7422(f)(1). In a refund action, the taxpayer has the burden of proving that the challenged IRS assessment was wrong. *Webb v. Internal Revenue Service of United States*, 15 F.3d 203 (1st Cir.1994). Moreover, the government's tax assessments are presumed to be correct, and the taxpayer has the burden of producing evidence that will rebut that presumption. *United States v. Janis*, 428 U.S. 433, 456, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976); *Avco Delta Corp. v. United States*, 540 F.2d 258, 261 (7th Cir.1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977); *The Bubble Room v. United States*, 159 F.3d 553, 568 (Fed.Cir.1998); *United States v. McCombs*, 30 F.3d 310, 318 (2nd Cir.1994). The taxpayer's burden is both of production and persuasion. *Janis*, 428 U.S. at 440, 96 S.Ct. 3021.

■ Essentially, this means the federal court will consider the correctness of the tax assessment *de novo*, while "imposing the risk of non-persuasion on the taxpayer." *Ruth v. United States*, 823 F.2d 1091, 1094 (7th Cir.1987). In limited cases, however, courts will not recognize the presumption when the taxpayer shows the assessment is without a "rational foundation" or is "arbitrary and erroneous." *Zuhone v. Commissioner*, 883 F.2d 1317, 1325 (7th Cir.1989). One way to raise such a challenge to the assessment, is for the taxpayer to offer evidence that shows he or she cannot be linked to the tax-generating activity. *Gold Emporium, Inc. v. Commissioner of Internal Rev.*, 910 F.2d 1374, 1378 (7th Cir.1990). Absent evidence of this type, the presumption will attach. *Id.*

## III. DISCUSSION

### A. Estate Tax Framework

The Internal Revenue Code ("IRC") provides that the value of the gross estate of a decedent shall include "the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated." 26 U.S.C. § 2031(a). That value is measured only by "the extent of the interest therein of the decedent at the time of his death." *Id.* § 2033. For example, if the decedent's interest is a qualified joint interest, the value included in the gross estate is one-half of the value of such interest. *Id.* § 2040. A gross estate also includes the value of any property interests for which the decedent has at any time during the three-year period preceding the date of death made a transfer by trust or otherwise, with certain exceptions. *Id.* § 2035.

The value of a taxable estate, on the other hand, is determined by deducting from the value of the gross estate, expenses, indebtedness, taxes, losses, transfers for public, charitable and religious uses, bequests to the surviving spouse, transfers to qualified domestic trusts, and sales of employer securities to employee stock ownership plans. *See* 26 U.S.C. §§ 2051, 2052, 2053, 2054, 2055, 2056, 2056A, 2057. Two of the provisions that authorize these deductions from the gross estate are implicated by the issues in the dispute between the Estate and the United States of America (the "U.S."). The first, for charitable contributions, allows a deduction for the amount of all bequests or transfers to a trustee or trustees, "but only if such contributions or gifts are to be used by such trustee or trustees ... exclusively for religious, charitable, scientific, literary, or educational purposes...." 26 U.S.C. § 2055(a). The other allows deductions for bequests to a surviving spouse. *See* 26 U.S.C. § 2056.

### B. Summary of Arguments

With respect to the charitable deduction, the parties disagree about the character of

the trust created by Kenneth's will, with the Estate contending that it was created exclusively for religious and charitable purposes, and the U.S. asserting that the will created a split-interest trust that did not meet the requirements for deducting the value of the interest created for charitable purposes. Under the IRC, no charitable deduction will be allowed when an interest in property "passes or has passed from the decedent to a person, or for a use" that qualifies for the deduction, and "an interest ... in the same property passes or has passed ... from the decedent to a person, or for a use," that does not qualify for the deduction, unless certain criteria are met. 26 U.S.C. § 2055(e)(2). If the split-interest bequest involves a remainder interest and "such interest is in a trust which is a charitable remainder annuity trust or a charitable remainder unitrust ... or a pooled income fund," the transfer for the qualified purpose will be deductible. *Id.* § 2055(e)(2)(A). In the case of any other qualifying interest, if that interest "is in the form of a guaranteed annuity or is a fixed percentage distributed yearly of the fair market value," it will be deductible. *Id.* § 2055(e) (2)(B). The apparent purpose behind either limitation is to render the amount of the qualified interest ascertainable at the time of transfer.

The IRC also provides for a means of reforming the split-interest transfers described in § 2055(e)(2) that do not comply with the requirements for deductibility of a charitable transfer. *See* § 2055(e)(3). A "qualified reformation" means a change in the "governing instrument by reformation, amendment, construction, or otherwise, which changes a reformable interest into a qualified interest ...." under certain circumstances. *Id.* The process involves considerations of the difference in value between the reformable interest and the qualified interest, the duration of the interests before and after reformation, and whether the payments to persons or for purposes that are not qualified are fixed or otherwise ascertainable. The Estate has not taken advantage of the statutory process for reforming a split interest, contending instead that no split interest exists, which means that any reformation of the trust was not a qualified reformation under the statute. *See, e.g., Estate of Hall v. Commissioner of Int. Rev.,* 93 T.C. 745, 1989 WL 154261 (U.S.Tax Ct.1989), *aff'd* 941 F.2d 1209 (6th Cir.1991).

According to the Estate, the primary issues to be resolved on the motions for summary judgment are 1) whether the decision of the Indiana Probate Court is entitled to deference as a matter of law; 2) whether principles of *res judicata* bind the IRS and prevent this Court from deciding the same issues before the Indiana courts; and 3) whether the language "missionaries preaching the Gospel of Christ," created an unascertainable class of beneficiaries in addition to Lawndale Community Church and Milligan College. In response, the U.S. provided arguments against each of the issues raised by the Estate, and added that the Indiana courts erred as a matter of law in their decisions to construe the will and amend the testamentary trust. In addition, both parties debate the accuracy of the IRS's calculation of the marital deduction.

## C. Effect of Indiana Courts' Decisions

The Court will first address the issues relating to the decision by the Indiana probate court to construe Kenneth's will as creating a testamentary trust for exclusively charitable purposes. A brief review of the relevant provisions will facilitate resolution of these issues. The will provides as follows:

ITEM V

5.01 All of the rest, residue and remainder of my property, I give and bequeath to Norma Jeanne Starkey, Cynthia Starkey Robinson, Christopher Kenneth Starkey, Theresa Carole Starkey, and Carrie Jeanne Starkey, whom I nominate and appoint as Trustees, to be held by said Trustees, in trust for the uses and purposes herein set forth.

5.02 Half of the income from the trust is to go to Lawndale Community Church in Chicago, Illinois provided that Wayne Gordon is still the pastor of it at the time of my death and that church will receive this until the time that he is no longer pastor. The Trustees are to manage the property of the Trust for the benefit of this beneficiary, missionaries preaching the Gospel of Christ, and Milligan College.

5.03 Subject to the provisions ... relative to the termination of this trust and the provisions for distribution, the Trustees may distribute to a beneficiary or apply for such beneficiary's sole benefit, so much of the net income and corpus of the trust at any time and from time to time as the Trustees deem advisable. Any income which is not distributed may be accumulated as income or added to the trust.

Compl. Ex. B; Def's Ex. 1. In a subsequent codicil to the will, Kenneth further characterized this testamentary trust as a "charitable trust," and specified that "upon the occurrence of the terminating events," the residue of both testamentary trusts is to be distributed to Milligan College. Compl. Ex. B; Def's Ex. 2.

■ During proceedings to construe the meaning of section 5.02 of Item V, the Indiana probate court took testimony from Christopher, who drafted the will and is the Estate's executor and attorney, from the accountant who prepared the estate tax return for the Estate, and from Dr. Lynn Franken, a professor of English from Butler University. The U.S. did not appear in any of the proceedings and was not a party to the action in the Indiana state court. Consequently, it had no opportunity to cross-examine any of these witnesses regarding their testimony, and it presented no witnesses of its own. The Estate suggests two different strategies for it to capitalize on the favorable decisions by the Indiana probate court and the Court of Appeals. They first argue that the two decisions represent a clear statement of Indiana law with respect to the

meaning of Kenneth's will and the character of the testamentary trust created in it. Citing *Erie*, the Estate suggests that this Court must apply Indiana law to resolve the substantive issues before it. *See Erie Rwy. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). That is not so. This is not a case of diversity jurisdiction in which the federal court is asked to resolve a matter of state law between diverse parties. Rather, it is an action founded on federal subject matter jurisdiction, dealing predominantly with issues of federal tax law. *See* 28 U.S.C. § 1346 (granting federal courts original jurisdiction over any civil action against the United States); 26 U.S.C. § 7422 (governing civil suits to obtain a tax refund). The *Erie* doctrine does not apply to this action.

Alternatively, the Estate argues that the IRS is challenging the state court's rulings, and that if it succeeds it will place the trustee in an untenable position. According to this line of reasoning, if the Court finds that the testamentary trust has three beneficiaries—the church, the college and a class of missionaries—the trustee could make a distribution that might violate one judgment while it complies with the other. The Estate relies on a variation of the *Erie* doctrine applied by the Supreme Court in *Commissioner v. Estate of Bosch*, a case with similar facts. 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). When faced with a situation in which a state trial court made a decision under state law regarding estate property, the *Bosch* Court held that "where the federal estate tax liability turns upon the character of a property interest held and transferred by the decedent under state law, federal authorities are not bound by the determination made of such property interest by a state trial court." *Bosch*, 387 U.S. at 457, 87 S.Ct. 1776. Nevertheless, according to *Bosch*, when the decision regarding a property interest has been made by the state's highest court it constitutes an authoritative exposition of state law, and federal district courts would be required to apply it in the cases before

them. *Id.* at 465, 87 S.Ct. 1776. Otherwise, if there is no decision by the state's highest court, federal courts "must apply what they find to be the state law, giving 'proper regard' to relevant rulings of other courts of the State." *Id.*

■■■ The proper regard to be given the rulings of lower state courts depends in part on how closely they align with what the state's highest court might do if faced with the question, and how thoroughly the decision was analyzed. *See Clarin Corp. v. Massachusetts Gen. Life Ins. Co.*, 44 F.3d 471, 474 (7th Cir.1994) (if state's highest court has not ruled on issue of state law, decisions of intermediate appellate courts "control unless there are persuasive indications that the highest state court would decide the issue differently"). Federal courts are accustomed to making these assessments of persuasive authority, especially when applying state law in a federal action. Thus, assuming that determining the federal issue involves resolving an issue of state law, the decisions of lower state courts are "attributed some weight," but they are "not controlling" when the highest court of the state has not spoken on the point. *Bosch*, 387 U.S. at 465, 87 S.Ct. 1776; *see also Estate of Bowgren v. Commissioner*, 105 F.3d 1156, 1161 (7th Cir.1997).

■■■ The Estate's reliance on *Bosch* for determining the effect the Indiana probate court's decision should have in these proceedings is only partially correct. Applicability of this precedent, however, depends on whether the probate court's decision is relevant and valid. With respect to the latter, as far as the state court's decision *can* go, it can be given some weight. When the state trial court reaches out to decide issues of federal law or that are not properly before it, that decision will be given no weight in this proceeding. Here, the state court was empowered to construe the language of Kenneth's will and the testamentary trust created therein. It also had authority under Indiana law to amend the "trust document" (the provisions of the will establishing the trust) to

correct any mistakes or omissions that would defeat the decedent's intent as perceived from his will. The crucial question, however, is what relevance these rulings have on the disputed issues in this action. Before answering that question, the Court will address several issues about which the parties have argued at length.

The U.S.'s arguments focus on the fact that the state's highest court did not rule on the merits of the issues relating to proper construction and reformation of the testamentary trust, making the lower court's ruling not binding on this court. This argument diverts attention away from the real issues, which are the relevance and proper application of the state court's decision. In subsequent sections, however, the U.S. provides more assistance on the issue of the proper regard to give to the lower courts' decisions. For example, the U.S. argues that the doctrines of claim and issue preclusion do not dictate the effect of the probate court's decision, and that the lower court proceedings were not adversarial. If true, both of these factors provide a basis for reducing the weight to be given the probate court's decision, and the subsequent appellate ruling.

■■■ Under the doctrine of claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Because the U.S. was not made a party to the state court proceedings, nor could it have been, the doctrine of claim preclusion does not apply. *See Bosch*, 387 U.S. at 462–63, 87 S.Ct. 1776; *see also Baker v. General Motors Corp.*, 522 U.S. 222, 118 S.Ct. 657, 666, n. 11, 139 L.Ed.2d 580 (1998). The Estate has produced no evidence that the U.S. or its privies were either a party, or a real party in interest, to the state court proceedings. For the same reason, issue preclusion does not apply. *See Tice v. American Airlines, Inc.*, 162 F.3d 966, 974 (7th Cir.1998). In addition, the absence of the

U.S. as a party in the state probate court proceedings provides the common thread between both this argument and the next, that it was a non-adversarial proceeding.

During the proceedings before the Indiana probate court, all of the evidence and arguments were presented by the Estate. The missionaries, who may have had a contrary position with respect to interpretation of the language of the will, were not represented. The U.S. was not a party. From this Court's review of the transcript it appears that the probate court was not given the type of full and fair presentation of the issues that is the hallmark of adversarial proceedings. *See Perry v. Leeke,* 488 U.S. 272, 291, 109 S.Ct. 594, 102 L.Ed.2d 624 (1989) (adversarial system is premised on well-tested principle that truth and fairness are discovered by "powerful statements on both sides of the question."); *Strong v. Indiana,* 538 N.E.2d 924, 931 (Ind.1989) (cross examination is hallmark of adversarial system); *see also Noblesville Casting Div. of TRW, Inc. v. Prince,* 438 N.E.2d 722, 729 (Ind.1982) (same, in civil context). This does not mean that the probate court erred in making a ruling with respect to the meaning of the will and the testamentary trust under state law. It merely means that this Court will accord less weight to the state court's ruling as it relates to the issues in this action.

Turning to the real question in this matter—what effect the Indiana probate court's decision should have on the issues before this Court—the Court is assisted by a more precise statement of the issues that must be addressed in resolving the tax refund dispute between the Estate and the U.S. Under the IRC, the taxable estate of a decedent, which is the gross estate minus allowable deductions, is subject to a federal estate tax. 26 U.S.C. § 2001. That tax is imposed on the transfer of the taxable estate, furthering Congress' general policy of "taxing the transmission of wealth at death." *United States v. Stapf,* 375 U.S. 118, 134, 84 S.Ct. 248, 11 L.Ed.2d 195 (1963). The estate tax is not a tax on the property "in the ordinary sense . . . but upon the right to dispose of it;" it is not a tax on property of the beneficiary, but on "the transfer of the estate." *Continental Illinois Nat'l. Bank & Tr. Co. v. United States,* 185 Ct.Cl. 642, 403 F.2d 721, 728 (1968) (citing *United States v. Perkins,* 163 U.S. 625, 628, 16 S.Ct. 1073, 41 L.Ed. 287 (1896), *Y.M.C.A. v. Davis,* 264 U.S. 47, 44 S.Ct. 291, 68 L.Ed. 558 (1924)), *cert. denied,* 394 U.S. 973, 89 S.Ct. 1456, 22 L.Ed.2d 752 (1969). In fact, the Supreme Court has declared that the estate tax is a "tax on the act of the testator, not on the receipt of the property by the legatees." *Id.*

What this means is that Indiana's "characterization" of the trust in 1996 may affect its future tax treatment, but it cannot affect its status at the time of the completed taxable transaction: the transfer of the estate. The testator's act of transferring property must comply with the provisions governing allowable deductions. The only way to discern whether his "act" was tax exempt is to look at what he directed be done with the estate at the time of his death. That evidence can only be found in the words of Kenneth's will. For that reason, this Court must analyze the will to determine whether the transfer of wealth described therein met the criteria for a charitable deduction at the time of Kenneth's death.

Any deductions from the gross estate to arrive at a taxable estate must be specifically authorized by the IRC. *Id.* at 725 (citing *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348 (1934)). In the case of the charitable deduction at issue here, the code is specific that, to be deductible, the transfer or bequest must be "to a trustee or trustees . . . but only if such contributions or gifts are to be used . . . *exclusively* for religious, charitable, scientific, literary, or educational purposes. . . ." *See* 26 U.S.C. § 2055(a)(3) (emphasis added). Cases construing this provision have held it to mean that unless the testator has

specifically ordered the trustee to hold or use the contribution *exclusively for charitable purposes*, the bequest will not qualify for a deduction under § 2055(a)(3). *Cont. Ill. Bank*, 403 F.2d at 726; *Estate of Bennett v. Commissioner*, 100 T.C. 42, 66, 1993 WL 19583 (1993). Further, the statute will not allow a deduction unless it is shown that the testator intended the gift to be used exclusively for charitable purposes. *Id.* These two elements of proof must be met to obtain a charitable deduction under § 2055(a) for a bequest to a trustee: a clear expression of the testator's intent that the gift be used exclusively for charitable purposes, and language in the grant that restricts the trustee to such use.

When a testator does not, by the terms of his will, create a trust to be used by the trustees exclusively for charitable or religious purposes, the bequest to that trust will not qualify for a deduction under § 2055(a). *See Levey v. Smith*, 103 F.2d 643, 646 (7th Cir.1939); *Langfitt v. United States*, 321 F.Supp. 360, 366 (W.D.Pa.1970). The limitation of the bequest to a charitable use "must be found within the terms of the Will itself." *Levey*, 103 F.2d at 646. It does not matter that the trustee subsequently uses the gift for a charitable purpose. *Id.; Langfitt*, 321 F.Supp. at 367; *Continental Ill. Bk.*, 403 F.2d at 725. Instead, because the right to a deduction depends on what the testator has directed respecting use of the gift, it must be shown that the failure of the trustee to use the gift for charitable or other exempt purposes would constitute a breach of duty under the terms of the trust instrument. *Langfitt*, 321 F.Supp. at 367. Nor does it matter that the trust instrument itself is subsequently modified to bring it into compliance with the code provision for charitable deductions. *See Estate of Kraus v. Commissioner*, 875 F.2d 597, 600 (7th Cir.1989); *Van Den Wymelenberg v. United States*, 397 F.2d 443, 445 (7th Cir.), *cert. denied*, 393 U.S. 953, 89 S.Ct. 377, 21 L.Ed.2d 364 (1968); *Estate of LaMeres v. Commissioner*, 98 T.C. 294, 311, 1992 WL 54258 (U.S.Tax Ct.1992); *Harris v. Commissioner*, 461 F.2d 554, 557 (5th Cir.1972); *see also Estate of Rapp v. Commissioner*, 140 F.3d 1211, 1216 (9th Cir.1998).

With this framework established, the Court is better informed about whether the decisions of the Indiana probate and appellate courts could resolve the issues of this case. When federal tax liability *turns upon* the character of a property interest governed by state law, the federal court defers to rulings by the state's highest court, and gives "proper regard" to rulings of lower courts. The key concept is that the federal tax liability must turn on, or be governed by, the characterization of property under state law. Here, according to the Estate's theory, the "property" is the testamentary trust, which the Indiana probate court has reformed to qualify it for tax exempt treatment under the federal tax laws. In doing so, the probate court justified its decision by a construction of the will that it found revealed the testator's intent to create a trust that would distribute its income and corpus only to organizations that would qualify for such exemptions. Assuming, without finding, that to be true, the Court is left wondering how that finding relates back six years to the time of death and the actual transfer, which is the taxable event. The Estate has not provided any justification or authority for such retroactive effect of the state court's reformation.

As this Court has already noted, to the extent that the state court's order attempted to resolve whether the testamentary trust actually qualified for a charitable deduction from the gross estate, it cannot be given any weight. That is strictly a matter of federal law and could not be resolved without the presence of the U.S. in the proceedings. However, to the extent that the state court has reformed the "trust instrument" (the provisions of the will creating the trust) to comply with § 501(c)(3) statutory language, its ruling can have only prospective effect. As in *Rapp*, the taxpayer will still reap the bene-

fit of the reformation and corresponding exemption, if one is granted, in the future. *See* 140 F.3d at 1216. The reformation, however, can have no retroactive effect on a completed transaction with an entity that is not a party to the trust agreement or the legal proceedings. *Van Den Wymelenberg,* 397 F.2d at 445.

In *Van Den Wymelenberg,* the Seventh Circuit held that, even assuming an amended trust agreement expressed the taxpayer's intent for prior gifts, and that the deficiency in the earlier agreement had been inadvertent, "tax consequences must be determined by the original agreement." *Id.* The Van Den Wymelenbergs were taxpayers who had executed trust agreements in 1961 to benefit their grandchildren, with the intent of ensuring that the gifts would qualify for the annual gift tax exclusions. *Id.* at 444. In fact, they had particularly instructed their attorney to draft the agreement to accomplish that purpose, but through "inadvertence" the agreement failed to contain the necessary language to do so. *Id.* The couple filed gift tax returns in April of 1962, reporting the gifts as "split gifts," and claiming exclusions from the gift tax which meant that no taxable gifts were reported. *Id.* In September of 1963, the IRS sent them a notice that the gift tax exclusions would not be allowed. *Id.* at 445. Shortly thereafter, the taxpayers executed a corrected trust agreement, containing the language needed for the tax exclusions, and they claimed that the modified agreement brought their 1961 gifts into compliance with the code. *Id.*

In July of 1964, the IRS sent them a Notice of Deficiency and assessed the back gift taxes. *Id.* The Van Den Wymelenbergs paid the taxes, filed for a refund, and filed suit upon the IRS's denial of the tax refund. *Id.* The district court upheld the IRS's decision and the couple appealed. *Id.* The primary issue on appeal was whether the amended trust agreement executed in 1963 could retroactively determine the federal tax consequences of the 1961 gifts. *Id.* The Van Den Wymelenbergs relied on several Wisconsin cases that said a written instrument which,

through mistake, does not embody the parties' intent may be reformed by the parties through voluntary execution of a corrected instrument. *Id.* The Seventh Circuit declined to apply the Wisconsin law to the facts at hand. Citing a string of cases from the Second, Third, Eighth, Ninth, Tenth and D.C. Circuits, the Seventh Circuit held that "not even judicial reformation can operate to change the federal tax consequences of a completed transaction." *Id.* It explained that, "[a]s to the parties to the reformed instrument the reformation relates back to the date of the original instrument, but it does not affect the rights acquired by non-parties, including the government." *Id.*

The rationale for this decision is that if such reformations were allowed to have retroactive effect on tax liability, there would be "considerable opportunity" for "collusive state court actions having the sole purpose of reducing federal tax liabilities." *Id.* It would also cause federal tax liabilities to remain unsettled for years, and to be vulnerable to the after-the-fact actions of private persons to negate the tax consequences of completed transactions in completed tax years. The applicability of *Van Den Wymelenberg* to the facts in this action depends on whether the Court finds that a completed transaction in a completed tax year occurred.

The IRC establishes duties on a taxpayer with respect to reporting taxable events and paying taxes. Whenever the gross estate exceeds $600,000.00, the executor must file an estate tax return, and that return is due nine months after the date of death, unless an extension of time has been granted. 26 U.S.C. §§ 6018, 6075; 26 C.F.R. §§ 20.6018, 20.6075–1. In fact, when the estate tax return is more than one month late, a penalty will be added to the amount of tax due equal to a percentage of the tax due. 26 U.S.C. § 6651. In general, when a tax return is required, "the person required to make such return shall, without assessment or notice and demand from the Secretary, pay such tax

to the internal revenue officer with whom the return is filed." 26 U.S.C. § 6151. What this means is that the obligation to pay taxes for taxable events is imposed on taxpayers by operation of law.

 In the case of estate taxes, a special estate tax lien arises in favor of the government as of the date of the decedent's death, without notice or filing, and it remains as a lien until paid in full for ten years from the date of death. *See* 26 U.S.C. § 6324; *United States v. Davis,* 52 F.3d 781, 782 (8th Cir.1995); *see also Municipal Tr. & Sav. Bk. v. United States,* 114 F.3d 99, 101 (7th Cir.1997) (estate tax lien attaches to land at moment heir received land). Because the taxable event is transfer of the estate, which was completed in a prior tax year, and the tax on that event is imposed by operation of law, and the IRS's right to the taxes arises automatically at the time of the decedent's death, the Court finds that a completed transaction occurred in a completed tax year. The reasoning and holding of *Van Den Wymelenberg* are applicable to the facts in this case. Consequently, the proper regard to give the rulings of the Indiana courts is to limit them to having only the ability to characterize the Starkey trust for federal tax purposes with respect to future taxable events, and to have no retroactive effect for such purposes.

Both Indiana courts appear to have been of the understanding that the changes the Estate was asking to be made to the will and testamentary trust were at the suggestion of the IRS and for the purpose of allowing the Estate to avoid estate taxes for the transfer to the trust. *See* Plf's Ex. 3, Att. F, Court of Appeal Memorandum Decision at 2–3. In its four and one-half page decision, the Indiana Court of Appeals wrote:

> The IRS notified the Estate that if it would add language to the trust clarifying that the term 'missionaries' was merely descriptive of the Lawndale Community Church, then the trust would qualify as a charitable trust. Oth-erwise, almost $1,000,000.00 in estate and inheritance taxes would be owing. *Id.* The probate court similarly wrote that reformation of the trust "so as to bring it into compliance with Sections 170, 2055, 2522 of the code, would not prejudice any beneficiary, but would be beneficial to such decedent's estate and to all of the beneficiaries of the charitable trust." Plf's Ex. 2 at 50, Probate Court Order, ¶ 4. The courts' concern that their acts would help resolve the disputed tax liability was particularly evident from the probate court's last paragraph, which states that "the trust established under the will of Kenneth E. Starkey shall *in all ways* be considered a charitable trust." Plf's Ex. 2 at 50 (emphasis added). In addition, the probate court specifically referred to the section of the code that governs deductions from estate taxes for transfers to qualified charities.

Unfortunately, the state courts' decisions cannot have the desired effect on resolution of the disputed tax liability facing this Court. First, they were not being asked to resolve the issue of whether the Estate qualified for the federal tax deduction at issue. Second, even if they had been asked to do so, their decision could not bind the U.S. without it being a party to the state court proceedings, which it was not. Third, the U.S. was not a party to the trust agreement and thus is not bound by a reformation of that agreement that would have retroactive effect. Fourth, the law in Indiana governing reformation requires the court to make two findings, based on clear and convincing evidence. *See Estate of Reasor v. Putnam Cty.,* 635 N.E.2d 153, 158–59 (Ind.1994) (noting that reformation is an "extreme equitable remedy"); *see also Ruff v. Charter Behavioral Health Sys.,* 699 N.E.2d 1171, 1173 (Ind.Ct.App.1998) ("In Indiana, equity has jurisdiction to reform written documents in only two well-defined situations: 1) where there is mutual mistake . . .; or 2) where there has been a mistake by one party, accompanied by fraud or

inequitable conduct by the remaining party . . . ."); *Urban Hotel Mgt. Corp. v. Main and Washington Joint Vent.*, 494 N.E.2d 334, 338 (Ind.App.1986) (noting that "a mistake as to legal import of language used will not normally support a claim for reformation of an instrument.").

 Particularly, before granting the equitable remedy of reformation, the court must make a determination of the parties' intent, and that a mistake was made in the writing so that it does not reflect their intent. *Id.* In this case, because the "instrument" being reformed is a trust instrument found in a will, the court would make the determination of the grantor's intent, and whether a mistake was made in the writing so that it did not reflect that intent. Based on this Court's review of the probate court's decision in light of Indiana law on reformation, those two findings were not specifically made, and there was no indication of the level of proof required of the Estate.

Finally, the precise issues for this Court to decide are whether the testator intended that the portion of his estate transferred to the trust would be used by the trustees exclusively for charitable purposes, and whether the language he used in the grant to the trust restricted the trustees to such use in a way that would be enforceable against the trustees in a breach of duty action. All that the state court has done is construe the will in a way that might lend support to the first issue, provided that this Court is convinced that such a construction is supported by Indiana law. The state court's decision, however, can have no bearing on the second issue. Although the state court's reformation of the Starkey trust instrument may relate back to the inception of the trust as between the Estate and the trust's beneficiaries, it cannot have that effect as between the Estate and the U.S.

## D. The Estate's Claim to a Charitable Deduction

The estate tax laws view the taxable event as the transfer of the decedent's wealth from the decedent to the recipient. In the case of the transfer at issue, the recipients are Norma Jeanne Starkey and her four children, as trustees. The trust was created by the language in the will and came into existence at the time that a portion of the estate was transferred to the trustees. *See* Ind.Code § 30–4–2–1; *Koehler v. Koehler*, 75 Ind.App. 510, 121 N.E. 450 (1919) (for there to be a trust of any kind there must be a trust fund); *First & Tri–State Nat'l Bank & Tr. Co. v. Caywood*, 95 Ind.App. 591, 176 N.E. 871 (1931) (where intended gift is incomplete, it would not be converted into declaration of trust); *see also* Rest.2d of Trusts § 74 (to have a trust there must be trust property). That transfer occurred at the time of Kenneth's death, which marks the taxable event for purposes of determining whether the Estate was entitled to a charitable deduction.

 As noted above, the reformation of the trust instrument governing the testamentary trust created by Kenneth's will has no retroactive effect under state law on third parties, including the U.S., "who had previously acquired rights under the instrument." *See Bowes v. United States*, 593 F.2d 272, 276 (7th Cir.1979) (federal estate tax becomes an obligation of the estate on the date of death); *Estate of Bennett*, 100 T.C. at 61. The U.S. acquired rights under the trust instrument at the time of Kenneth's death, because the obligation to pay an estate tax on the value of the gross estate that remains after all legitimate deductions are taken arises at the time of death. To determine whether the Estate was entitled to a deduction for the transfer in question, the Court must interpret the language in the will and the testamentary trust as of the time of the transfer, which is when the U.S. acquired rights under the instrument. The deduction may be allowed only if the trust complied with the requirements found in § 2055(a). The Court finds that it did not.

The language of the trust to which the estate property was transferred had to

accomplish two goals in order for the transfer to qualify for a tax deduction. First, it had to expressly demonstrate that Kenneth intended the trustees to use or hold the property exclusively for charitable, religious, or other exempt purposes. Upon careful review of all of the language in Item V of the will, the Court cannot discern such an intention. Instead, the grant is to the five named family members to hold the property "in trust for the uses and purposes herein set forth." Those "uses and purposes" can only be found in section 5.02, in which Kenneth declared that half of the income of the trust was to go to Lawndale Community Church, with no limitation on the church's use of the property. Records from the Indiana probate court proceedings demonstrate that the church qualifies as an exempt organization under § 2055. Thus, that portion of the bequest would qualify for a deduction if its value were ascertainable at the time of Kenneth's death. *See Merchants Nat. Bk. v. Commissioner,* 320 U.S. 256, 261, 64 S.Ct. 108, 88 L.Ed. 35 (1943); *Shafer v. United States,* 452 F.2d 666, 667 (7th Cir. 1971). However, the devise, or transfer, was not to the church, it was to a trust. The church was only one of the beneficiaries of the trust. Therefore, it is the trust itself that must conform to the requirements of § 2055(a).

▮ The second sentence of section 5.02 is the one that has created the problems. It states that the trustees are to "manage" the property "for the benefit of this beneficiary," which all agree refers to the Lawndale Community Church, "missionaries preaching the Gospel of Christ, and Milligan College." The Indiana probate court construed this sentence to mean that "missionaries preaching the Gospel of Christ" was a descriptive clause referring to the church. Under Indiana law, which this Court must apply when interpreting a will, the primary goal is to determine and carry out the testator's intent. *See Gladden v. Jolly,* 655 N.E.2d 590 (Ind.App. 1995); *In re Estate of Spanley,* 458 N.E.2d 289, 290 (Ind.App.1984). "The provisions of a will must be upheld and construed to

give effect to the intent expressed in it, if possible, rather than have that intent frustrated." *Gladden,* 655 N.E.2d at 592. This Court is not convinced that the state court's interpretation follows Kenneth's intent.

▮ To determine Kenneth's intent when he used this language, the court looks first to the actual language used. Although the sentence begins with direction to the trustees for managing the trust, it includes a reference to Milligan College, which both parties agree is an intended beneficiary of the trust. Thus, although not worded precisely, it appears to be a further designation of the beneficiaries of the trust. *See* Ind.Code § 30–4–2–1(b) (no formal language required to create a trust). With respect to whether the "missionaries" phrase was intended as a class of beneficiaries, or as a description of the church, the Court finds that the more reasonable reading of the language is that it was intended as a separate class of beneficiaries. Kenneth did not use this "descriptive" phrase when referring to the church in the first sentence of this section, nor did he employ a parallel descriptive phrase for the college. The testator made his intentions clear that the church was to receive one half of the trust's income as long as Wayne Gordon was still the pastor, and that the income distribution was to end when Gordon ceased to be the pastor. He also identified the Lawndale Community Church as being in Chicago, Illinois. These details provided sufficient identification of the church and there was no need for further description to identify this beneficiary. The two remaining beneficiaries designated in the trust were given less specific descriptions. Although Kenneth's codicil described Milligan College as being in Tennessee, the designation of this beneficiary in the trust did not include that level of detail. In similar fashion, Kenneth did not further identify the "missionaries preaching the Gospel of Christ." Instead, he left that to the discretion of his trustees.

The Court finds other language in Item V and elsewhere that reinforces its reading of this section. In Item IV, Kenneth created a trust for the "education of the issue of" his four children and Curt and Marianne Bannister. Each name in the list represented a different beneficiary of the trust. The listing of a series of specific beneficiaries in Item IV is a pattern repeated in section 5.02 of Item V. Additionally, the first three sections of Item IV described the actual grant, the property, and the uses and purposes of the trust. The remaining eight sections of this Item are identical to the last eight sections in Item V. In both testamentary trusts, Kenneth used the language, "[n]o interest under this instrument shall be transferable or assignable by any beneficiary or be subject *during his life* to the claims of *his* creditors or to any *claims for alimony or for the support of his spouse,"* Will, secs. 4.05, 5.05 (emphasis added).

 If the Court were to interpret the language of section 5.02 as establishing only two beneficiaries, the Lawndale Community Church and Milligan College, then the emphasized language in section 5.05 would be rendered meaningless, for churches and colleges are not considered to have a "life" or a "spouse." In construing a will, effect should, if possible, be given to every provision and the will must not be interpreted to render any part meaningless since it is presumed every word is intended by the testator to have some meaning. *In re Estate of Spanley,* 458 N.E.2d at 290; *Diaz v. Duncan,* 406 N.E.2d 991, 1000 (Ind.App.1980). Thus, the existence of this provision in Item V reinforces the Court's reading of section 5.02 as designating three beneficiaries of the trust, one of whom is a class of unspecified missionaries. The reasonableness of this finding is further reinforced by the fact that the initial efforts of the Estate to amend the trust so that it would comply with § 2055(a) involved naming seven specific organizations that appear, from their names, to be involved in providing religious or missionary services. Def's Ex. 5. That list of organizations was substituted for the phrase "missionaries preaching the Gospel of Christ."

 The Estate argues that Kenneth's intent with respect to this trust was clearly expressed in the codicil, in which he described Item V as establishing a "charitable trust." The codicil primarily provided for a recipient of the remainder of these trusts once they ended, which is Milligan College. While Kenneth may have intended for the trust at issue to be a charitable trust, he did not succeed in creating one that would satisfy the requirements for tax exempt status under the IRC. This argument relates to the second goal the trust language had to meet for the transfer to the trust to qualify for the charitable deduction. It had to restrict the trustees to holding, using and distributing the trust property exclusively for religious, charitable or other exempt purposes described in § 2055(a). It did not. Merely describing a trust as charitable does not ensure its compliance with federal laws for tax exemptions.

Nor does it restrict the trustee's discretion. Given that the Court has found that Kenneth designated an unspecified class of missionaries to whom the trust proceeds may be distributed, it is entirely possible that the trustees could have distributed corpus or income to a specific person, who claimed to be a missionary, who would use the proceeds for his or her personal benefit. Nothing in the language of the trust constrains the trustees from doing this. For this reason, the second element necessary to qualify for a charitable deduction is not met. Moreover, because there is no certainty as to how long the distribution of one half of the income to the church would continue, there is no certainty as to the specific value of the gift to the church. For that reason, the Estate could not qualify for a charitable deduction measured by that limitation on the trustee's discretion.

The trustees were authorized "to distribute to a beneficiary or apply for such beneficiary's sole benefit, so much of the net income and corpus of the trust at any

time and from time to time as the Trustees deem advisable." Sec. 5.03, Item V, Will. Other than the income to be distributed to the church, Kenneth placed no restraints on, or set any standards for, the exercise of the trustees's discretion. Nor did he otherwise limit the purpose for which the distributions could be made. *See Estate of Marine v. Commissioner*, 990 F.2d 136, 139–40 (4th Cir.1993). In fact, there is no way for beneficiaries to enforce their rights to any corpus or income against the trustees should they decide to distribute all of the corpus to that hypothetical person claiming to be a missionary. In light of these deficiencies, the testamentary trust to which Kenneth devised a portion of his estate does not meet the requirements that would entitle the Estate to take a charitable deduction for the transfer. The IRS disallowance of the claimed deduction was correct.

### E. The Estate's Claimed Marital Deduction

The IRC allows for a deduction from the gross estate for the value of any property interest which passes from the decedent to the decedent's surviving spouse. 26 U.S.C. § 2056. To qualify for this deduction, the property passing from the decedent to his surviving spouse must be included in the decedent's gross estate. 26 C.F.R. § 20.2056(a)–2(b)(2). Thus, the deduction is limited to property passing to the spouse from the decedent and which is included in the gross estate.

Section 3.01 of Kenneth's will states as follows: "I give, devise and bequeath one-third of my estate which third is to include my residence in Indiana, my condominium in Florida, and my personal automobile to my wife, Norma Jeanne Starkey." According to the IRS, Kenneth was referring to his probate estate when he made his bequest to his spouse equal to "one-third of my estate." To the extent that the specific named items were in the probate estate when Kenneth died, they should have been used to satisfy that bequest, the IRS stated. The Estate, on the other hand, argues that the "estate" Kenneth

referenced in the bequest should be interpreted as his gross estate. With this interpretation, the Estate calculated and distributed to Norma Jeanne the specifically named property and other property equal to one-third of the gross estate. That is the amount of their claimed marital deduction. The IRS determined that the distribution to Norma Jeanne exceeded one-third of the probate estate, and disallowed the value of the condominium, its personal property, and the car.

This Court finds that the Estate is not entitled to the marital deduction it claimed for the value of the condominium, the household items and the automobile. On the original Form 706, Line 1, the Estate reported a gross estate of $3,896,670.00, which included the condominium, the household goods and the automobile. Def's Ex. 3, Scheds. A, F. The Estate's claimed marital deduction was $1,298,890.00, or exactly one-third of the decedent's gross estate. *Id.*, Sched. M. The U.S. calculated the marital deduction it allowed based on one-third of the gross probate estate, and disallowed the value of the disputed assets.

The burden of proof and persuasion is on the Estate, which must provide evidence that overcomes the presumption that the IRS's assessment is correct. Rather than proving that the IRS's assessment was wrong, the Estate merely argues that it was. It cites the affidavit of the executor of the Estate, Christopher, in which he repeats the same conclusory statements. Plf's Ex. 1, Starkey Aff. ¶¶ 8–11. A taxpayer has the burden not only of showing the IRS's assessment was wrong, but also of showing the correct amount of the refund and the basis for the claimed entitlement to that amount. *See Bubble Room, Inc. v. United States*, 159 F.3d 553, 561 (Fed.Cir.1998) (citing *Janis*, 428 U.S. at 440, 96 S.Ct. 3021). The Court finds that the Estate has failed to meet its burden and accepts the IRS's assessment of the marital deduction and consequent estate taxes as correct.

## IV. CONCLUSION

The Court has found that the testamentary trust created by Kenneth's will did not contain language, or express an intent, that would allow it to qualify for a charitable deduction under § 2055 of the IRC. It has also found that the Estate failed to meet its burden of proving the IRS incorrectly disallowed a portion of its claimed marital deduction. For the reasons provided herein, the motion for summary judgment filed by the U.S. is **GRANTED,** and the cross-motion for summary judgment filed by the Estate is **DENIED.** All other motions are deemed moot.